448 N.W.2d 335 (1989)
STATE of Iowa, ex rel. IOWA DEPARTMENT OF TRANSPORTATION, Appellee,
v.
GENERAL ELECTRIC CREDIT CORP. OF DELAWARE, Appellant, and
General Electric Credit Corp., n/k/a General Electric Capital Corp., Cross-Appellee, and
Heritage Communications, Inc., Appellant.
No. 88-1366.
Supreme Court of Iowa.
November 22, 1989.
*336 Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Sp. Asst. Atty. Gen., and John W. Baty, Asst. Atty. Gen., for appellee.
James C. Fifield and Thomas G. Fisher, Jr., of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellants and cross-appellee.
Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER and NEUMAN, JJ.
McGIVERIN, Chief Justice.
This matter arises from the Iowa Department of Transportation's (DOT) petition in equity to collect back registration fees and penalties under Iowa Code chapter 328 (1985) for the allegedly delinquent registration of an aircraft. The petition sought back registration fees and penalties from General Electric Credit Corp. of Delaware (G.E. Delaware), titleholder and lessor of the aircraft; General Electric Credit Corp. (now known as General Electric Capital Corp. or G.E. Capital), parent corporation of G.E. Delaware; and Heritage Communications, Inc. (Heritage), lessee of the aircraft. *337 The trial court decided the case on the parties' motions for summary judgment, ruling in favor of the DOT against G.E. Delaware and Heritage but in favor of G.E. Capital against the DOT. Only G.E. Delaware and Heritage appealed, and the DOT cross-appealed, joining G.E. Capital in the appeal as cross-appellee.
We affirm the judgment of the district court on the cross-appeal and reverse on the appeal.
I. Background facts and proceedings. The record in this summary judgment case consists of the pleadings, motions for summary judgment, answers to interrogatories, affidavits, exhibits and admissions on file in the district court.
Since 1980, Heritage has leased a Piper Cheyenne aircraft from G.E. Delaware. Heritage is an Iowa corporation with its principal place of business in Des Moines. The aircraft has always been hangared in Des Moines and used to transport Heritage personnel on intrastate business flights. Heritage does not receive compensation for transporting these persons. Heritage is obligated to make lease payments to G.E. Delaware regardless of the use of the aircraft.
G.E. Delaware is a foreign corporation not registered to do business in Iowa, and is a wholly-owned subsidiary of G.E. Capital. G.E. Delaware holds title to the aircraft. Since 1980 it has leased complete control over the aircraft to Heritage. G.E. Delaware has neither possession of nor the right to use the aircraft.
G.E. Capital, a New York corporation registered to do business in Iowa, is the parent corporation of G.E. Delaware. G.E. Capital has no other connection to the aircraft or to this litigation.
In June 1986, the DOT filed a petition in equity in the district court. The petition alleged that Heritage is subject to registration fees on the aircraft by reason of Iowa Code sections 328.20 and 328.37 (1985), and that G.E. Delaware and G.E. Capital are subject to registration fees on the aircraft by reason of Iowa Code sections 328.37 and 328.42. The petition sought determination of the date on which the aircraft became subject to registration under chapter 328 and judgment against the defendants for the statutory fees, as well as for penalties under Iowa Code sections 328.50 and 328.51, and related relief. Defendants uniformly denied liability on the ground that the aircraft is not subject to registration in Iowa by any of them.
The matter came before the district court for hearing on the parties' motions for summary judgment. In its order disposing of the case, the court ruled that Heritage was not required to register the aircraft under section 328.20. The court ruled, however, that both Heritage and G.E. Delaware had "operated" the aircraft in violation of section 328.37 and, therefore, were required to register the aircraft under that section. In addition, the court ruled that G.E. Delaware was required to register the aircraft under section 328.42.
The court further ruled that neither section 328.37 nor section 328.42 directly requires G.E. Capital to register the aircraft. The court also refused to pierce the corporate veil between G.E. Delaware and its parent, G.E. Capital.
On the issue of statutory penalties, the court ruled that the "power [to assess or to waive penalties] is discretionary with the department [of transportation] and the Court finds no reason to interfere with the fees and penalties assessed in this case."
In accordance with its rulings, the court granted the motion for summary judgment by the DOT against defendants Heritage and G.E. Delaware, and judgment was entered against those defendants for back registration fees and statutory penalties, accrued since 1980, in the amount of $142,306.60. G.E. Capital's motion for summary judgment against the DOT also was granted.
Heritage and G.E. Delaware appealed. G.E. Capital did not join in the appeal. The DOT subsequently filed a notice of cross-appeal purporting to appeal from that portion of the district court's ruling which held that G.E. Capital was not liable for the fees or penalties either directly or on a "pierce the corporate veil" theory. Heritage, G.E. *338 Delaware, and G.E. Capital moved to dismiss the DOT's cross-appeal as untimely filed. The motions were ordered submitted to this court with the appeal.
II. The cross-appeal against G.E. Capital. The threshhold issue here is whether this court must dismiss G.E. Capital from the case for lack of appellate jurisdiction. The issue has been raised by defendants' motions to dismiss the cross-appeal against G.E. Capital. As previously noted, the DOT has attempted to cross-appeal against G.E. Capital, but G.E. Capital did not appeal from the district court's ruling.
The rule in Iowa is that an appeal to the supreme court "must be taken within, and not after, 30 days from the entry of the order, judgment or decree," with certain exceptions not relevant to this case. Iowa R.App.P. 5(a). Furthermore, "[a] cross-appeal may be taken within the 30 days for taking an appeal or in any event within five days after the appeal is taken." Id. In considering the requirements of rule 5(a), we have said:
A timely appeal is jurisdictional, and cannot be conferred by consent.... It is our duty to refuse, on our own motion, to entertain an appeal not authorized by rule.
Robco Transp., Inc. v. Ritter, 356 N.W.2d 497, 498 (Iowa 1984).
In this case, the trial court entered its order on the various motions for summary judgment on August 23, 1988. Heritage and G.E. Delaware filed their notice of appeal twenty-nine days later, on September 21, and the final day for filing notice of appeal came and went on September 22. On September 26, five days after the initial notice of appeal was filed, the DOT filed its notice of cross-appeal from that portion of the district court order in favor of G.E. Capital. Thus, the DOT, as appellee, purported to cross-appeal against G.E. Capital, a non-appellant.
Heritage, G.E. Delaware, and G.E. Capital moved to dismiss the DOT's cross-appeal against G.E. Capital, asserting that a cross-appeal can be taken only against an appellant. Because G.E. Capital is not an appellant, they argue that the DOT's "cross-appeal" is really an appeal and, as an appeal, it is untimely. Therefore, the argument goes, the court has no jurisdiction over that portion of the appeal involving G.E. Capital. In response, the DOT contends that rule 5(a) allows a cross-appeal against any party to the judgment appealed from, whether appellant or non-appellant.
The term "cross-appeal" is not defined in the Iowa Rules of Appellate Procedure. The term is used in rule 5(a), which specifies the time within which a cross-appeal may be taken, and again in Iowa Rule of Appellate Procedure 13(b), which lays down the briefing schedule to be followed in cases involving cross-appeals.
We find no Iowa case on point; but the question presented by this fact pattern has been addressed in other jurisdictions. See Annotation, Right To Perfect Appeal, Against Party Who Has Not Appealed, By Cross Appeal Filed After Time For Direct Appeal Has Passed, 32 A.L.R.3d 1290 (1970 & Supp.1989). As the commentator notes, the resolution of the question has "depend[ed] entirely upon the wording and construction of pertinent rules or statutes, if any, concerning the availability of review by the method of cross appeal." Id. at 1291. The annotation classifies the decided cases into groups depending on the general language of the rule or statute involved, namely, those "designating party against whom cross appeal may be filed," and those "restricting right of cross appeal to certain litigants." Compare Maxwell v. Aetna Life Ins. Co., 128 Ariz. 350, 625 P.2d 939 (App.1981) (rule providing that cross-appeal was available to an "opposing party" for twenty days after appeal allowed cross-appeal against appellants only, because after a final judgment at the trial level, only an appellant would be an "opposing party" as to an appellee) with Brown v. Maryland Casualty Co., 245 Ark. 70, 431 S.W.2d 258 (1968) (where statute provided that "[a]ny other party to the action" could cross appeal within ten days after an appeal, the time for any second or subsequent appeal, whether direct or cross, *339 was extended for ten days after the first notice of appeal of the judgment) and Fed. R.App.P. 4(a)(3) (providing that after timely initial appeal by one party, "any other party" may file notice of appeal within next fourteen days).
Unlike the rules considered above, however, rule 5(a) does not designate the parties against whom a cross-appeal may be filed, nor does it extend or restrict the right of cross-appeal to any particular litigants; it merely directs that a cross-appealan undefined termmust be taken within the specified time.
As defendants point out, rule 13(b) is written as if the cross-appellee and appellant are always the same party.[1] We do not believe, however, that a vague implication of that rule's language should be allowed to dictate the construction of rule 5(a). Our rules of appellate procedure do not specify whether a cross-appeal may be taken against a non-appellant within the time allotted for cross-appeals in general. Given the ambiguity of the rules on this point, we believe that the best course is to give rule 5(a) a construction consistent with the salutary purpose of our rules of civil and appellate procedure.
The Iowa Rules of Appellate Procedure, like the Iowa Rules of Civil Procedure, should be construed liberally so that controversies can be fairly and efficiently determined, whenever possible, on the merits. See, e.g., Smith v. Baule, 260 N.W.2d 850, 854 (Iowa 1977) (Iowa supreme court is committed to liberal construction of rules of civil procedure to insure resolution of disputes on their merits); Board of Dir. of Larrabee Consol. School Dist. v. Cherokee County Bd. of Educ., 260 Iowa 210, 215, 149 N.W.2d 304, 307 (1967) (Iowa Rules of Civil Procedure are to be construed liberally to promote the speedy determination of litigation upon its merits).
Allowing cross-appeals of this type would streamline the appellate process by making "precautionary appeals" by a party that prevailed at the trial level against some, but not all, adverse parties unnecessary. The risk of any party suffering injustice because of a last-minute appeal would be minimized, because a party's stake in the litigation could still be protected by cross-appeal if portions of the judgment favorable to it are put in jeopardy by appeal.
In this case, for example, the DOT may well have chosen not to appeal the judgment in favor of G.E. Capital only because it believed that the judgment against Heritage and G.E. Delaware was surely collectible. That judgment was finally appealed one day before the time limit for appeal expired. Were we to adopt the defendants' construction of rule 5(a), the DOT would have been left with only one day to appeal the portions of the judgment adverse to it so as to protect its rights in the event the portions of the judgment favorable to it were reversed on appeal. We refuse to place such a high premium on the gamesmanship likely to occur under such a rule.
Moreover, litigants in the position of G.E. Capital in this case would not be unfairly burdened by allowing cross-appeals of this type against them under the Iowa rules. After all, rule 5(a) allows a cross-appeal only if it is filedat the very latestno more than five days beyond the thirty day time limit for an initial appeal. The advantages of our court considering a judgment in its entirety outweigh any inconvenience suffered by non-appellants who, like G.E. Capital, are joined in the fray by cross-appeal within the short time allowed for cross-appeals under the Iowa rules. See *340 Robbins v. Campbell, 65 Ill.App.2d 478, 213 N.E.2d 641 (1965) (reaching similar conclusion under Illinois law).
We hold that for purposes of appeal under Iowa Rule of Appellate Procedure 5, an action involving multiple parties will be considered to result in a single judgment, so that where one of the several parties to the action appeals and jeopardizes any part of the judgment, a party may cross-appeal against any other party to the litigation within the time allotted for cross-appeals. The DOT's cross-appeal, therefore, is properly before the court.
Defendants' motions to dismiss the DOT's cross-appeal for lack of jurisdiction are overruled.
III. Registration of the aircraft under Iowa Code chapter 328. The district court rendered judgment in this case by ruling on the parties' motions for summary judgment under Iowa Rule of Civil Procedure 237. Although certain parties contend that factual disputes exist as to the corporate veil piercing and statutory penalty issues, we find it unnecessary to reach those issues. We agree with the district court that the facts relevant to the remaining legal questions are undisputed. Summary judgment, therefore, was proper on those questions. See, e.g., Goodwin v. City of Bloomfield, 203 N.W.2d 582, 588 (Iowa 1973) ("Where the only conflict concerns legal consequences of undisputed, underlying facts, entry of summary judgment is proper."). We need only determine whether the law was correctly applied.
A. Registration of the aircraft under Iowa Code section 328.20. The DOT's petition in this action alleged that Heritage is subject to registration fees on the aircraft by reason of Iowa Code sections 328.20 and 328.37 (1985). The district court ruled that Heritage is not required to register the aircraft under section 328.20, but is required to register the aircraft under section 328.37. Heritage appealed from the latter ruling.
The DOT argues that the judgment against Heritage should be affirmed on the basis of section 328.20, as well as on the basis of section 328.37. See, e.g., Howard v. Des Moines Register and Tribune Co., 283 N.W.2d 289, 291-92 (Iowa 1979) (judgment may be affirmed on grounds rejected by the trial court as well as on the ground accepted). Thus, we are squarely faced with the question of whether section 328.20 requires Heritage to register the aircraft.
Iowa Code section 328.20 (1985) provides:
Every civil aircraft owned either wholly or in part by persons residing in this state, unless specifically excepted under the provisions of this chapter, shall be registered annually with the department, by the owner thereof.
The aircraft is not specifically excepted from registration, and Heritage is residing within Iowa. The fighting issue is whether the aircraft is "owned either wholly or in part" by Heritage, so that Heritage is an "owner" required to register the plane under section 328.20.
As the district court noted, the term "owner" is not defined in chapter 328. The DOT, however, argues that because the aircraft registration fee imposed by chapter 328 is "in lieu of" most other taxes on the aircraft, Iowa Code § 328.25,[2] it is appropriate to impute the definition of the term "owner" in chapter 428the property tax chapterto chapter 328. Under section 428.9, an "owner" includes a person "having in their possession property belonging to another subject to taxation in the assessment district where said property is found, when the owner of the goods does not reside in the county." This definition would probably encompass Heritage in this case.
In support of its argument that the chapter 428 definition of "owner" applies here, the DOT offers a 1960 letter opinion of the attorney general which adopted its reasoning. See 1960 Op.Iowa Att'y Gen. 217, § 20.53. The DOT also asserts that it has followed this interpretation of chapter 328 *341 as a matter of "longstanding administrative policy." The district court rejected these arguments and held that section 328.20 does not require Heritage to register the aircraft. We agree.
First, at the times relevant to this case, chapter 328 had no special definition of "owner." The term, therefore, should be given its ordinary meaning in the absence of a showing of persuasive reasons to the contrary. See, e.g. Welp v. Iowa Dep't of Revenue, 333 N.W.2d 481, 483 (Iowa 1983). Opinions of the attorney general are entitled to respectful consideration, but they are not binding on the court. Sioux City Comm. School Dist. v. Iowa State Bd. of Pub. Instruction, 402 N.W.2d 739, 742 (Iowa 1987).
We recognize that long term leases share many of the characteristics of common law ownership. In ordinary parlance, however, there is a distinction between an "owner" and a "lessee" or "renter." The only remote reference to chapter 428 found in chapter 328 is the provision in section 328.25 that registration fees are "in lieu of" most other taxes. That is not a persuasive reason to abandon the ordinary meaning of the term "owner," as distinct from that of "lessee" or "renter." As the district court noted, neither an opinion of the attorney general nor the DOT's longstanding interpretation of chapter 328 can create a statutory requirement where none exists.
Second, the fact that chapter 328 might be regarded as a tax statute and, therefore, related to chapter 428, is not enough to impute the section 428.9 definition of "owner" to chapter 328. Although we agree with the district court that not every fee imposed by government can be called a tax, we think that chapter 328 is close enough to justify application of the rules of construction of tax statutes.
Those rules are well settled:
Statutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body. It must appear from the language of a statute that the tax assessed against the taxpayer was clearly intended.
Iowa Auto Dealers v. Iowa Dep't of Revenue, 301 N.W.2d 760, 762 (Iowa 1981). In addition:
(1) In considering legislative enactments we should avoid strained, impractical or absurd results.
(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.
(3) Where language is clear and plain, there is no room for construction.
(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.
(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.
(6) We give weight to the administrative interpretation of statutes, particularly when they are of longstanding.
(7) In construing tax statutes doubt should be resolved in favor of the taxpayer.
Welp, 333 N.W.2d at 483-84 (quoting Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue, 224 N.W.2d 437, 440 (Iowa 1974)).
In this case, the plain meaning of "owner" is distinct from that of "lessee." If there is any room for construction, the ordinary meaning rule favors Heritage; there is no manifest intent of the legislature to the contrary. Any doubt must be resolved in favor of Heritage. Under our rules of construction of tax statutes, chapter 328 cannot be construed to have adopted the chapter 428 definition of "owner."
Third, the language of chapter 328 and its recent amendment show that the legislature understood that lessees were not covered by section 328.20 as it existed before the amendment. In 1988, the legislature added a new subsection to section 328.1 so that chapter 328 now includes a definition of "owner" that specifically includes lessees. *342 See 1988 Iowa Acts ch. 1063, § 1 (codified at Iowa Code § 328.1(23) (1989)) ("`Owner' means a person owning or renting an aircraft, or having the exclusive use of an aircraft, for a period of more than thirty days."). Section 328.20 also was amended so that it now reads, in relevant part:

A civil aircraft owned either wholly or in part by persons residing in this state, or operated, or otherwise controlled within the boundaries of the state for a period of more than thirty days, unless specifically excepted under this chapter, shall be registered annually with the department, by the owner thereof.
1988 Iowa Acts ch. 1063, § 2 (codified at Iowa Code § 328.20 (1989)) (1988 amendments indicated by emphasis). The "explanation" accompanying the amendments to chapter 328 stated that:
The bill adds a definition of owner as being a person owning or renting an aircraft, or having the exclusive use of an aircraft, for a period of more than thirty days.

The bill requires registration of civil aircraft which are hangared, serviced, maintained, operated, or otherwise controlled within the boundaries of the state for a period of more than thirty days.... Under current law, registration of aircraft is only required for civil aircraft owned wholly or in part by persons residing in the state.

(Emphasis added.)[3]
These amendments and their explanation strongly suggest that the legislature understood that under prior lawthe law applying to this caseHeritage was not required to register the aircraft under section 328.20.
Although the DOT argues that "changes made by revision of a statute will not be construed as altering the law unless the legislature's intent to accomplish a change in its meaning is clear and unmistakable," State v. Osborn, 368 N.W.2d 68, 69-70 (Iowa 1985), this court has cautioned that:
[a] statutory amendment usually changes the law, though there are exceptions where minor details are changed in such a way as to cast light on the legislature's earlier intent. Although it is regularly asserted that a change is minor and merely reflects what the legislature intended all along, exceptions to the general rule are rare. Most statutes, including statutes of amendment, are prospective, not retrospective. The rule outlining the exception is too often cited. Regularly, though improperly, it is offered as a justification to bolster an interpretation already reached.
Ruthven Consol. School Dist. v. Emmetsburg Community School Dist., 382 N.W.2d 136, 139 (Iowa 1986) (citation omitted).
The rule, not the exception, applies here. The extensive changes to chapter 328 made in 1988 are not mere clarifying revisions; the more reasonable inference to be drawn from the changes is that under chapter 328 as it existed prior to its amendment, leased or rented aircraft were not covered by section 328.20. Therefore, creation of a statutory definition of "owner" that included renters or lessees was necessary to compel resident lessees of aircraft to register their leased planes. That is the clear implication of the explanation which accompanied the amendments at their passage.
We agree with the district court on this issue and conclude that Iowa Code section 328.20 (1985) does not require Heritage, a resident lessee, to register the leased aircraft in Iowa.
B. Registration of the aircraft under Iowa Code section 328.37. In the district court, the DOT argued and the court agreed that both Heritage and G.E. Delaware are required to register the aircraft under Iowa Code section 328.37 (1985). The court implicitly rejected the *343 DOT's argument that G.E. Capital is required to register the aircraft under that section. Heritage and G.E. Delaware appealed the portions of the ruling adverse to them. The DOT continues to urge that G.E. Capital is also required to register the aircraft under section 328.37.
Iowa Code section 328.37 (1985) provides, in relevant part:
Except as provided in section 328.35, it shall be unlawful for any person to operate, or cause or authorize to be operated, any civil aircraft [or] airport ... unless there has been issued therefor or thereto an appropriate certificate of registration or special certificate by the department and such certificate is in force and effect.
Furthermore, section 328.40 provides that "[a]ny person who violates any of the provisions of [chapter 328] ... shall be guilty of a fraudulent practice." The note under section 328.40 refers the Code reader to chapter 714, which, among other things, classifies "fraudulent practices" according to their seriousness, as misdemeanors or felonies.
As defendants point out, section 328.37 clearly makes it a criminal offense to operate an aircraft without the "appropriate certificate of registration." They contend that section 328.37 itself does not require registration of aircraft, nor does it prescribe what would be the "appropriate certificate of registration" for a given aircraft, nor does it foreclose the possibility that the "appropriate certificate of registration" for an aircraft might be no certificate of registration at all. Defendants contend that the "appropriate certificate of registration" language in section 328.37 refers to whatever registration is required by the sections of chapter 328 that do prescribe what registration is proper for a given aircraft, namely, sections 328.20 and 328.42. They argue that neither section 328.20 nor section 328.42 requires this aircraft to be registered; therefore, there has been no violation of section 328.37 here.
The DOT argues that section 328.37 is relevant to this case for two reasons. First, the DOT argues that section 328.37 is relevant because it shows a broad legislative intent that should carry over to the construction of sections 328.20 and 328.42; the fact that section 328.37 is a penal statute does not mean that sections 328.20 and 328.42 cannot be considered in pari materia with it. See State v. Bartz, 224 N.W.2d 632, 635 (Iowa 1974). In addition, the DOT contends that the defendantsas operators of the aircraftare directly liable for the aircraft's registration under section 328.37. The DOT argues that the phrase "appropriate certificate of registration" in section 328.37 was intended to refer, for example, to an aircraft registration as distinct from an airport registration. The DOT concludes that section 328.37 requires every aircraft operated in Iowaunless excepted by section 328.35to be registered in Iowa. All parties agree that the aircraft is not excepted from section 328.37 by the provisions of section 328.35.
Assuming without deciding that section 328.37, a criminal statute, can be enforced by the DOT bringing an original petition in equity, and assuming further that all three defendants "operated" the aircraft within the meaning of Iowa code section 328.1(14),[4] section 328.37 itself does not require anyone to register any aircraft. The phrase "appropriate certificate of registration" in section 328.37 can only refer to the registration required by other sections of chapter 328, because otherwise there is no way to know what the "appropriate certificate of registration" would be. Section 328.37 borrows its content from the sections of chapter 328 that prescribe what certificate is required for various aircraft and airports, and, therefore, leaves open the possibility that the "appropriate certificate of registration" for the aircraft could be no certificate at all. The DOT's reading of this language, on the other hand, renders "appropriate" entirely superfluous. If the legislature had intended that every *344 aircraft and airport be registered without exception, it would not have inserted "appropriate" before "certificate of registration." It would then be unlawful to operate an aircraft or airport without a certificate of registration, under any circumstances.
We conclude that section 328.37 does not itself require anyone to register any aircraft; that section simply makes it a criminal offense to operate an aircraft otherwise required to be registered.
We reverse that portion of the judgment of the district court which found Heritage and G.E. Delaware liable under section 328.37, and affirm that portion which found no liability against G.E. Capital under that section.
C. Registration of the aircraft under Iowa Code section 328.42. The district court ruled that G.E. Delaware is required to register the aircraft under Iowa Code section 328.42 (1985), but that G.E. Capital does not own the aircraft and therefore is not required to register the aircraft under that statute. Section 328.42 (1985) provides, in relevant part:
Nonresident owners of aircraft operated within this state for the intrastate transportation of persons or property for compensation or the furnishing of services for compensation or for the intrastate transportation of merchandise, shall register each such aircraft....
All parties agree that G.E. Delaware is the nonresident owner of the aircraft, and that the aircraft is operated within Iowa. For G.E. Delaware to be required to register the aircraft, of course, it is not necessary that G.E. Delaware itself operate the aircraft; the aircraft need only have been operated by someone in one of the specified ways. The DOT produced no affidavits to controvert defendants' affidavits to the effect that the aircraft is not used to furnish services for compensation, or to transport merchandise. The fighting issue here is whether the aircraftleased by Heritage and used only to transport its personnel at no cost to themwas operated "for the intrastate transportation of persons or property for compensation...."
The DOT argues that the compensation paid by Heritage to G.E. Delaware under the lease satisfies the "for compensation" requirement of section 328.42. Because the aircraft was used for the intrastate transportation of persons, the DOT concludes that G.E. Delaware, the nonresident owner of the aircraft, is required to register the aircraft under section 328.42. The DOT now argues that G.E. Capital should be liable under section 328.42 only derivatively, as the parent of G.E. Delaware. Thus, the DOT apparently concedes that G.E. Capital does not own the aircraft.
In ruling that the aircraft was within this section and that G.E. Delaware was responsible for registration of the aircraft under it, the district court explained:
[G.E. Delaware] is the nonresident owner of the plane, and the plane was operated within the state for the intrastate transportation of persons. What is at issue is who had to receive compensation (and for what) for section 328.42 to apply. Defendants argue that the compensation had to be received as a consequence of the intrastate transport of people. The Court disagrees and holds that there only had to be compensation for use of an aircraft (in this case the rent paid by Heritage) which is subsequently used for the intrastate transport of people for Section 328.42 to apply. [G.E. Delaware] was obligated under Section 328.42 to register the plane it leased to Heritage.
We believe that the district court erred in holding that section 328.42 requires the aircraft to be registered by G.E. Delaware.
The effect of the district court's reading of section 328.42 would be to rewrite the statute to read, in substance:
Nonresident owners of aircraft operated [for compensation] within this state for the intrastate transportation of persons or property ... shall register [the aircraft.]
Under the district court's reading of the statute, the words "for compensation" are deemed to qualify "operated"; but in the statute as written, those words qualify "for the intrastate transportation of persons or *345 property." If the legislature had intended the former instead of the latter, it would have said so.
A different reading of the statute is also strongly suggested by the fact that the legislature carefully wrote in "for compensation" after "aircraft operated within this state for the intrastate transportation of persons or property" and after "[aircraft operated within this state for] the furnishing of services," but did not write in "for compensation" after "[aircraft operated within this state] for the intrastate transportation of merchandise." This shows that the legislature knew how to write a statute to tax an aircraft used for a certain activity without regard to whether the activity was undertaken for compensation. Instead, out of all aircraft used to transport persons or property intrastate, the legislature chose to tax only those aircraft transporting persons or property for compensation.
We believe the district court's reading of section 328.42 overlooks a distinction deliberately drawn by the legislaturewisely or notand broadens the class of nonresident-owned aircraft subject to Iowa registration. The wisdom of the legislation, however, is not for us to review. Courts must look to what the legislature said, rather than to what it should or might have said. Iowa R.App.P. 14(f)(13).
The district court's reading of section 328.42 also is contrary to an established canon of statutory construction. Under the "doctrine of the last preceding antecedent," referential, relative or qualifying words and phrases refer only to the immediately preceding antecedent, unless a contrary legislative intent appears. See State v. Lohr, 266 N.W.2d 1, 3-4 (Iowa 1978); 2A Sutherland, Statutes and Statutory Construction § 47.33 (4th ed. 1984). "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Sutherland, § 47.33 at 245. See also Cairns v. Grinnell Mut. Reinsurance Co., 398 N.W.2d 821, 824 (Iowa 1987) ("In exploring statutory intent, we have consistently reasoned that qualifying words and phrases ordinarily refer only to the immediately preceding antecedent."); State v. Kluesner, 389 N.W.2d 370 (Iowa 1986) (applying doctrine).
Applying this doctrine to section 328.42 leads to the conclusion that "for compensation" qualifies only the immediately preceding antecedent. There is no evidence of legislative intent to the contrary; in fact, the language of the statute suggests that the legislature purposefully chose not to tax all planes used for the intrastate transportation of persons. Moreover, the phrase "for compensation" is not set off from the preceding antecedents by commas. The language of the statute is such that unless the nonresident-owned aircraft is flown intrastate for the transport of persons or property and unless compensation is paid in exchange for that transport, then the aircraft is not subject to registration by virtue of the first clause of section 328.42. It is undisputed that Heritage, which controlled the aircraft during the relevant time, did not transport persons or property in exchange for compensation.
Finally, a special rule of construction for tax statutes applies here. If the meaning of a statute is in doubt, the doubt should be resolved in favor of the taxpayer.
We conclude that unless the aircraft was used to transport persons or property for compensationfor hire, as a charter or common carrier, for examplethen the aircraft is not subject to registration in Iowa by G.E. Delaware under the first clause of section 328.42. The aircraft was not so used. Therefore, we reverse the district court on its application of section 328.42 to G.E. Delaware, and affirm the court on its refusal to apply that statute to G.E. Capital. G.E. Capital does not own the aircraft.
D. Piercing the corporate veil and statutory penalties under Iowa Code chapter 328. In light of our conclusion that the aircraft is not required to be registered under Iowa Code chapter 328 (1985), we need not consider whether G.E. Capital may be held responsible for G.E. Delaware's fee liability or whether the district court properly assessed statutory penalties *346 against Heritage and G.E. Delaware. G.E. Delaware has no fee liability, and there can be no penalties where, as we have determined, there are no underlying delinquent fees.
IV. Disposition. In summary, we reverse on the appeal by G.E. Delaware and Heritage from the district court's judgment that they are required to pay registration fees and penalties under Iowa Code chapter 328 (1985). We affirm on the DOT's cross-appeal against G.E. Capital.
Costs on appeal are taxed to the DOT.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Iowa Rule of Appellate Procedure 13(b) provides:

Cross-appeals. In the event of cross-appeal... appellant shall serve and file a brief within fifty days after the date on which the appeal is docketed. Appellee (cross-appellant) shall serve and file a brief within thirty days after service of appellant's brief. Within thirty days after service of appellee's brief, appellant (cross-appellee) shall serve and file either a responsive brief or a statement indicating that a reply brief will not be filed because the issues on cross-appeal have already been addressed in appellant's brief. Appellee (cross-appellant) may serve and file a reply brief under Iowa rule of appellate procedure 14"c" within fourteen days after service of appellant's reply brief.
[2] Iowa Code section 328.25 (1985) provides:

The registration fees imposed by this chapter upon aircraft shall be in lieu of all taxes, general or local, except state sales or use tax, to which aircraft might otherwise be subject.
[3] The last quoted sentence of the explanation must have been referring only to section 328.20 and not to chapter 328 in general. Even before its amendment in 1988, chapter 328 clearly required registration of some civil aircraft other than "aircraft owned wholly or in part by persons residing in the state." See Iowa Code § 328.42 (1987) (requiring nonresident owners of aircraft used in specified ways in Iowa to register the aircraft).
[4] Iowa Code section 328.1(14) (1985) provides:

"Operation of aircraft" or "operate aircraft" means the use of aircraft for the purpose of air navigation ... and shall embrace any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise).