# IN THE SUPREME COURT OF IOWA

No. 07–0568

Filed August 14, 2009

**STEW-Mc DEVELOPMENT, INC.,**
    Cross-Appellant,

**JAMES F. KRESS,**
    Cross-Appellant,

**JOSEPH SCHMITT** and **PENNI SCHMITT,**
    Appellants,

vs.

**NANCY M. FISCHER** and **THOMAS J. FISCHER**,
    Appellees.

---

Appeal from the Iowa District Court for Dubuque County, Margaret L. Lingreen (trial) and John Bauercamper (summary judgment ruling), Judges.

Plaintiffs appeal grant of summary judgment to defendants in easement action, while defendants cross-appeal on abuse-of-process claim. **AFFIRMED.**

Robert L. Sudmeier and William N. Toomey of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellants Schmitt and cross-appellant Stew-Mc Development, Inc.

William S. Vernon and Brian S. Fagan of Moyer & Bergman, P.L.C., Cedar Rapids, for cross-appellants Kress and the Schmitts.

Brendan T. Quann and Peter D. Arling of O'Connor & Thomas, P.C., Dubuque, for appellees.

**APPEL, Justice.**

In this case, we must decide the timeliness of various cross-appeals filed by the parties seeking to challenge a district court ruling that the plaintiffs possessed only a limited easement in connection with certain real estate located in Dubuque County and rejecting a counterclaim for abuse of process. For the reasons expressed below, we find the cross-appeals timely filed. On the merits of the easement and abuse-of-process claims, we affirm the judgment of the district court.

## I. Factual and Procedural Background.

This case requires us to travel back in time to 1888, when Anton Birkel purchased land in Dubuque County. This property eventually passed on to his descendants, Rosa, then Joseph, and then Ferdinand Birkel. During Ferdinand's ownership, his mother Rosa lived on a separate farm in the northern portion of the property. Ferdinand allowed his mother and other relatives to travel across his land to obtain access to their home and the surrounding agricultural property. This access way became known in later years as "Kress Lane."

Rosa eventually sold her property to other persons outside the Birkel family. At some point, her land was divided into two separate parcels. Ferdinand, however, continued to permit Rosa's successors in title to use Kress Lane for access purposes. Ferdinand's land eventually passed to Louis Birkel. Louis also allowed the owners of the northern parcels of land to use Kress Lane.

In 1983, Louis sold his property to Nancy and Thomas Fischer. The two farm parcels to the north of the Fischer property continued to rely on Kress Lane to access their homes and property. Immediately prior to this dispute, the two northern parcels were owned by James Kress and Joseph and Penni Schmitt.

Though Kress Lane has vital importance to these farms, it is not a formal, well-structured thoroughfare. The lane has been described as a dead-end road six-tenths of a mile long. Only a small portion of Kress Lane crosses the Fischer property.

Kress Lane was never dedicated to and accepted by Dubuque County as a public road. No record title owner in the Birkel-Fischer chain of title ever executed a written, legal instrument granting a formal easement across the Fischer property for Kress Lane. For some time, however, Dubuque County engaged in limited road maintenance on Kress Lane by grading, installing culverts, and rocking the road. A few years ago, Dubuque County rural roads were given official names as part of the establishment of a rural address system to aid in the delivery of emergency services. This is when Kress Lane acquired its name.

In February 2002, Stew-Mc Development, Inc. made an offer to purchase the two-hundred acre Kress estate contingent upon the approval by the Dubuque County Board of Supervisors of an application to rezone the property to permit single-family residential development. In December 2002, Kress entered into a contract with the Schmitts for the sale of the portion of Kress Lane which crosses their property. Although Kress was the named purchaser in the real estate contract, Stew-Mc Development did extensive work on the roadway to improve it.

Kress hired John Herrig to assist in obtaining the approval of an application to rezone the Kress estate. At the meeting of the Dubuque County Planning Zoning Commission where Kress' application was considered, Nancy Fisher objected, asserting that the northern landowners possessed nothing more than an access easement over her property. The zoning commission refused the application, finding insufficient public access to the Kress estate. The Dubuque County

Board of Supervisors accepted the recommendation and denied Kress' application for rezoning.

In light of these developments, Stew-Mc Development implemented a new strategy. It offered to purchase the Kress property unconditionally, an offer which was accepted. Kress and Stew-Mc Development also filed what was styled a "Petition for Writ of Certiorari and for Declaratory Judgment" in Dubuque County District Court, naming the county supervisors and the county as defendants. The plaintiff sought a declaration that Kress Lane was a county road, thereby connecting the Kress estate to the public road system. The Fischers intervened in order to protect their rights.

The district court granted summary judgment in favor of the Fischers. The district court determined as a matter of law that Kress Lane was a private road based on an easement and was not a public roadway, either by direct acquisition, formal dedication and acceptance, implied dedication, or prescriptive easement. The district court's judgment was affirmed by the court of appeals in an unpublished decision. *Kress v. Dubuque County*, 697 N.W.2d 127 (Iowa Ct. App. 2005).

Stew-Mc Development regrouped after their defeat and launched another action in district court, this time naming the Fischers as defendants. In this action, the plaintiffs alleged that the Fischers had slandered their title and tortiously interfered in its contract with Kress. The plaintiffs also sought a declaratory judgment regarding the unlimited scope of their now admittedly private easement, which they asserted would be sufficient for residential purposes. Finally, they claimed an easement by prescription. The defendants filed a counterclaim alleging abuse of process.

The district court granted summary judgment in favor of the Fischers on all claims except the action for declaratory judgment of an unlimited private easement. The district court stated that this limited issue had not yet been litigated and that the pleadings submitted by the parties were insufficient to allow for summary judgment. In a later ruling, the district court determined that there was no need to determine the exact scope of the private easement as its proposed use—residential development—would obviously exceed its scope. The plaintiffs' action for declaratory judgment thus was denied.

Only the Fischers' abuse-of-process claim remained unsettled. The matter proceeded to a trial before the court. At trial, Nancy Fischer testified that plaintiffs' alleged agent, Herrig, had made several inappropriate and threatening remarks. Specifically, she testified that Herrig told her that the property at issue did not belong to her, that she should not attend the meeting of the zoning commission, and that if she attempted to obstruct the application to rezone the Kress property, the Fischers would be taken to court, which would be a great financial burden on her and her family. Nancy Fischer further testified that on another occasion, Herrig again warned her that legal action would be very costly and threatened the Fischers with financial ruin if they refused to cooperate with the development of the Kress property. Finally, Thomas Fischer testified that Herrig had come to the Fischer farm unannounced and told him that if the matter went to court, it would get "costly and ugly." Fischer found the remark to be a threat, improper, and unnecessary.

Plaintiffs' original counsel in the action, James Roth, testified on behalf of the plaintiffs. He stated that the purpose of the litigation was to establish the scope and extent of the plaintiffs' easement across the

Fischer property and then seek a zoning variance from the county. Roth specifically denied that the lawsuit was designed to threaten or intimidate the Fischers. He further observed that if the plaintiffs prevailed on its easement-by-prescription claim, it would assist them in their claims of slander of title and tortious interference with contract. Herrig also testified. He denied making the statements attributed to him by the Fischers.

The district court held that the Fischers failed to prove their abuse-of-process claim. The district court specifically found that the plaintiffs' "primary purpose in commencing the lawsuit was to establish a prescriptive easement and secure a declaration of their rights under [the] easement."

The Schmitts filed a notice of appeal twenty-nine days after this final district court decision. The Schmitts appealed the district court's ruling denying their claim of an unlimited easement across Kress Lane. Three days later, the Fischers filed what they styled as a cross-appeal, asserting that the district court erroneously dismissed their claim for abuse of process. Four days after the Fischer cross-appeal, Stew-Mc Development cross-appealed, challenging the district court's ruling that allowed the Fischers to amend their abuse-of-process petition on the eve of trial to assert a claim for attorneys' fees. The Schmitts and Kress joined in this cross-appeal.

At this point, the Fischers filed a motion to dismiss Stew-Mc Development's cross-appeal as untimely. The plaintiffs then filed a motion to dismiss the Fischers' cross-appeal as untimely. All parties then deluged the court with resistances to the motions of the adverse parties, and the procedural issues were thoroughly joined.

## II. Standard of Review.

We review a grant of summary judgment, whether the action be at law or equity, for correction of errors at law. *Keokuk Junction Ry. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000). Summary judgment is appropriate when, after review of the entire record, there is no genuine issue of material fact. *Id.*

The scope of review in actions for abuse of process is likewise limited to correction of errors at law. *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988). On appeal, we are bound by the trial court's findings of fact if supported by substantial evidence. *Collins Trust v. Allamakee County Bd. of Supervisors*, 599 N.W.2d 460, 463 (Iowa 1999).

## III. Discussion.

**A. Timeliness of Cross-Appeals.** At the time of this appeal, Iowa Rule of Appellate Procedure 6.5(1) (2007) stated that absent the filing of certain posttrial motions, "appeals to the supreme court must be taken within, and not after, 30 days from the entry of the order, judgment, or decree . . . ." The rule further provided, "A cross-appeal may be taken within the 30 days for taking an appeal or in any event within 5 days after the appeal is taken."[1] This court has held that the timeliness of an appeal is jurisdictional. *Robco Transp., Inc. v. Ritter*, 356 N.W.2d 497, 498 (Iowa 1984).

No party questions the timeliness of the Schmitts' original appeal. The sole issues relate to the timeliness of the Fischers' cross-appeal and the cross-appeal of Stew-Mc Development.

---

[1]The Iowa Rules of Appellate Procedure have since been amended. While the time for filing an appeal continues to be thirty days, the time limit for filing a cross-appeal has been extended to ten days. *See* Iowa R. App. P. 6.101(2)(*b*) (2009).

1. *Timeliness of Fischer cross-appeal.* Stew-Mc Development challenges the Fischers' cross-appeal as untimely. Stew-Mc Development asserts that the Fischers seek to appeal issues separate and apart from the issues appealed by the Schmitts and that, as a result, their action should properly be classified as an appeal, not a cross-appeal. If the Fischers' filing is characterized as an appeal it is untimely because it was not filed within thirty days of the final judgment. If classified as a cross-appeal, however, it complies with the rule because it was filed within five days of the Schmitts' appeal.

This court considered issues similar to those raised in this case in *State ex rel. Iowa Department of Transportation v. General Electric Credit Corp. of Delaware,* 448 N.W.2d 335 (Iowa 1989). In *General Electric,* the Iowa Department of Transportation (IDOT) filed an action against three separate corporate entities regarding their failure to register and pay statutorily-required fees for the operation of an aircraft within the state. *Gen. Elec.,* 448 N.W.2d at 337. The district court granted summary judgment in favor of the IDOT against two of the defendants, Heritage and G.E. Delaware, but refused to pierce the corporate veil and granted summary judgment in favor of the third defendant, G.E. Capital. *Id.*

Heritage and G.E. Delaware filed a notice of appeal on the twenty-ninth day after the district court's judgment. *Id.* at 338. IDOT filed a notice of cross-appeal more than thirty days after the district court judgment, seeking to appeal from that portion of the district court's ruling which granted summary judgment on behalf of G.E. Capital. *Id.* G.E. Capital sought to dismiss the cross-appeal as untimely, claiming that because G.E. Capital was not a party to the original appeal, the filing of the IDOT was not a cross-appeal but in fact should be treated as an original appeal. *Id.*

In addressing G.E. Capital's argument, the court noted that the Iowa Rules of Appellate Procedure did not define the term "cross-appeal." *Id.* In light of the lack of definition, the court turned to the underlying purpose of the rules. The court observed that "[t]he Iowa Rules of Appellate Procedure, like the Iowa Rules of Civil Procedure, should be construed liberally so that controversies can be fairly and efficiently determined, whenever possible, on the merits." *Id.* at 339. The court concluded that allowing cross-appeals like that brought by IDOT "would streamline the appellate process by making 'precautionary appeals' by a party that prevailed at the trial level against some, but not all, adverse parties unnecessary." *Id.* The court further noted that "[t]he risk of any party suffering injustice . . . would be minimized, because a party's stake in the litigation could still be protected by cross-appeal if portions of the judgment favorable to it are put in jeopardy by appeal." *Id.*

Stew-Mc Development attempts to distinguish *General Electric* by asserting that in *General Electric*, the party bringing the cross-appeal was a litigant with respect to the claims challenged in the original appeal. In this case, Stew-Mc Development points out that the Fischers are attempting to file a cross-appeal against a party that was not part of the original appeal. Stew-Mc Development further claims that the abuse of process claim that underlies the Fischers' cross-appeal is factually and procedurally independent of the claims appealed in the Schmitt's original appeal.

We reject Stew-Mc Development's arguments. In *General Electric*, this court explicitly stated that for the purpose of the rules of appellate procedure,

> an action involving multiple parties will be considered to result in a single judgment, so that where one of the several parties to the action appeals and jeopardizes any part of the

judgment, a party may cross-appeal against any other party to the litigation within the time allotted for cross-appeals.

*Gen. Elec.*, 448 N.W.2d at 340. We see no reason to depart from this holding now.

We further note that the approach employed in *General Electric* is consistent with Iowa Rule of Appellate Procedure 6.101(1)(*c*) (2009), which provides that dispositive orders on fewer than all of the issues in an action, even though they are severable from the remaining issues, may be appealed within the time for an appeal from the order or judgment finally disposing of the action as to all remaining parties or issues. It would seem inequitable here to treat the Schmitt and Fischer actions as the same for the ignition of the time period to appeal—thereby allowing the plaintiffs to wait until the resolution of the Fischers' abuse of process claim before filing an appeal on the easement issue—but then treat the actions as separate and distinct as to the close of the appeal window. We, therefore, find the Fischers' cross-appeal timely.

2. *Timeliness of Stew-Mc Development cross-appeal.* As noted previously, the Fischers moved to dismiss the Stew-Mc Development cross-appeal as untimely as it was taken more than five days after the filing of the Schmitt appeal. The Stew-Mc Development cross-appeal, however, was filed within five days of the Fischers' cross-appeal, which raised the abuse-of-process action on appeal for the first time. The rationale raised by the Fischers in seeking dismissal of Stew-Mc Development's cross-appeal is similar to that raised by Stew-Mc Development in its challenge to the cross-appeal of the Fischers. We reject the Fischers' timeliness challenge to the Stew-Mc Development cross-appeal for the same reasons that we reject Stew-Mc Development's challenge to Fischers' cross-appeal.

**B. Scope of Private Easement.**

1. *Scope of easement as applied to proposed residential development.* In their petition, plaintiffs sought a declaratory judgment that their easement over the Fischer property "is unlimited" and is "sufficient for . . . residential development purposes." The Fischers resisted, arguing that the easement was limited in scope and did not allow for such a dramatic expansion of use. The district court granted summary judgment in favor of the Fischers, holding that whatever the scope of the easement, it was not broad enough to cover the proposed residential development.

The only evidence in the record related to the scope of the easement came from affidavits submitted by the Fischers. The affidavits generally stated that the easement over the Fischer property was granted to allow access to farm property first to Rosa Birkel and then to two farm property owners to the north. These facts were not disputed by any party. In light of the undisputed nature of the facts, the case was ripe for summary judgment.

We next turn to the law of easements. It is well-settled that "the dominant estate acquires no greater use[] than the parties intended" when an easement was created. *Schwob v. Green*, 215 N.W.2d 240, 243 (Iowa 1974). Ordinarily, however, where the easement involves ingress and egress, "a mere increase in the frequency of use will not constitute an additional burden." *Id.* Additionally, easements will accommodate technological developments. *See generally Skow v. Goforth*, 618 N.W.2d 275, 278 (Iowa 2000) (noting that an easement for horse and buggy access may be used by dominant estate for modern vehicles).

The proposed use of Kress Lane for a major residential development, however, greatly expands the original scope of the

easement, which was granted to two farm properties at a time when comparatively dense residential development was not contemplated. *See Flynn v. Mich.-Wis. Pipeline Co.,* 161 N.W.2d 56, 61 (Iowa 1968) (scope of easement, if not defined, is only that which is "reasonably necessary and convenient for the purposes for which it was created"). Residential and agricultural access to two farm properties at the turn of the century is a much different proposition than access to a modern residential development. It is not a mere *increase* in use, but a *change* in use that could not have been within the contemplation of the parties when the original easement was granted. *See Boudreau v. Coleman,* 564 N.E.2d 1, 5–6 (Mass. App. Ct. 1990) (finding residential development to be an additional burden outside the intent of the parties); *Leffingwell Ranch, Inc. v. Cieri,* 916 P.2d 751, 756–58 (Mont. 1996) (finding subdivision of dominant estate into 174 parcels not within parties' intent and inconsistent with historical use); *Nadeau v. Town of Durham,* 531 A.2d 335, 337–38 (N.H. 1987) (finding development of housing for senior citizens with fourteen units not reasonably foreseeable); Restatement (Third) of Property § 4.1(1), at 496–97 (2000) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

We recognize that there is some authority that appears to be more amenable to alterations in the use of easements. *See Shooting Point, L.L.C. v. Wescoat,* 576 S.E.2d 497, 503 (Va. 2003) (finding subdivision of dominant tenement into residential lots an increase in the degree of burden but not an imposition of an additional burden); *Clain-Stefanelli v. Thompson,* 486 S.E.2d 330, 337 (W. Va. 1997) (finding prescriptive

easement supported future residential development because residential access was original purpose and use of easement).  We conclude, however, that the better view under the undisputed facts of this case is that the original grantors did not contemplate the expansive use of the easement now sought by the plaintiffs and that this fact is dispositive.  As a result, we conclude that the district court properly granted summary judgment to the Fischers on the issue of the scope of the private easement.[2]

2.  *Failure of district court to delineate precise scope of easement.*  The plaintiffs further argue that the district court did not fully resolve the issues in the litigation by simply declaring that the easement was insufficient to support the proposed residential development.  They argue that the district court should have further clarified the scope and dimensions of the private easement, even if it was insufficient to accommodate the proposed development.

In a declaratory action, the ordinary rules of pleading apply.  *Smith v. Bitter*, 319 N.W.2d 196, 201 (Iowa 1982).  Declaratory actions are thus governed by the same liberal pleading standards that are applied in other civil actions.  As in any other action, an issue may be directly, or impliedly, raised by the pleadings.  *See Frederick v. Shorman*, 259 Iowa 1050, 1056–57, 147 N.W.2d 478, 482 (1966).  Issues may also be tried by consent of the parties even if the issue is not expressly framed by the pleadings.  *Rouse v. Rouse*, 174 N.W.2d 660, 666 (Iowa 1970) (issues may be tried by consent, though not specifically presented in the pleadings); *Bloomfield v. Weakland*, 199 P.3d 318, 326 (Or. Ct. App.

---

[2]The plaintiffs also assert on appeal that the Fischers are barred by laches or estoppel from asserting that their easement over Kress Lane is limited.  As these issues were neither presented to nor ruled upon by the district court, they have not been preserved for appeal.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

2008) (finding express easement claim tried by implied consent in declaratory action).

Nonetheless, the mere mention of a subject in a petition for declaratory action does not open the door to resolution of any and all hypothetical issues. Instead, the issues decided by the district court should be limited to those directly or impliedly raised by the pleadings or litigated with the consent of the parties. There must be a live case or controversy that is actually being litigated in order for a court to declare the rights of the parties. *See Trans Pac. Leasing Corp. v. Aero Micronesia, Inc.*, 26 F. Supp. 2d 698, 712 (S.D.N.Y. 1998) (holding where "parties have failed adequately to present the issue to the Court," a declaratory ruling is not available); *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 700 N.W.2d 729, 736 (S.D. 2005) (finding trial court not required to rule on whether easement allowed tenement owner to take full count of parking spaces where issue was outside scope of pleadings); *Gwinn v. Collier*, 443 S.E.2d 161, 164 (Va. 1994) (holding property owner not entitled to declaratory relief on whether use of property for storage purposes complied with zoning ordinance where owner had not requested relief on that issue).

In this case, the pleading states that the issue before the court is whether plaintiffs' "access over the easement is unlimited and would include access sufficient to support a rezoning of the Kress Stew-Mc property for residential development. . . ." The pleading is narrow and does not raise the issues that the plaintiffs now seek to litigate. Moreover, our review of the record indicates that the issue of whether the easement could support the proposed residential development was the only one that was truly litigated by the parties. Other issues related to the easement's precise dimensions, location, and scope were simply not

explored with sufficient intensity to characterize them as litigated by consent. As a result, the district court did not err in declining to grant relief beyond that necessary to decide the present controversy.

**C. Abuse of Process.** After trial, the district court ruled against the Fischers with respect to their claim for abuse of process. The district court found that the plaintiffs' primary purpose in filing their action was "to establish a prescriptive easement and secure declaration of their rights under [the] easement." The district court further found that Herrig's alleged statements, even if assumed to be true, were general statements that were insufficient to establish a claim of abuse of process.

Upon review of the record, we affirm the judgment of the district court. The district court applied the correct legal standard in examining an abuse-of-process claim. To prove a claim of abuse of process, a plaintiff must show (1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). With respect to the second element of the cause of action for abuse of process, " '[t]he plaintiff must prove that the defendant used the legal process *primarily* for an impermissible or illegal motive.' " *Id.* (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990)).

After reviewing the evidence, the district court made a factual determination that the primary purpose of the litigation was to establish a prescriptive easement and their rights thereunder. There is substantial evidence to support the district court's determination, including testimony by the plaintiffs' original counsel. There was, moreover, a substantial legal issue in this case, namely, whether the use of the Kress property by many landowners in a proposed residential development amounted to a change in the scope of the easement or merely an increase

in use. As noted above, there is some division in the authorities on this issue, and the question often involves a matter of degree.

Because the district court applied the correct law on the abuse-of-process claim and because the district court's factual findings are supported by substantial evidence, we affirm the district court's dismissal of the abuse-of-process claim. Because of our ruling on the merits, it is not necessary for us to address the timeliness of the motion to amend the pleadings to assert a claim for attorneys' fees based upon abuse of process.

## IV. Conclusion.

For the above reasons, the judgment of the district court is affirmed.

**AFFIRMED.**