## Anderson et ux. v. Philadelphia Electric Company

*Julian W. Barnard*, for plaintiffs.

*High, Swartz, Childs & Roberts*, for defendant.

KNIGHT, P. J., October 27, 1953.—The Philadelphia Electric Company, by virtue of proper proceedings condemned an easment or right to erect and maintain a high tension electric power transmission line in the bed or right of way of Red Lion Road in front of plain-

tiff's property in Lower Moreland Township, this county.

A jury of view was appointed which, after viewing the premises and holding a hearing, filed a report in which plaintiff was awarded $1,000 as damages, payable to him by the Philadelphia Electric Company.

The company has filed exceptions. The burden of the exceptions is that the electric line imposed no additional servitude on plaintiff's land, situated within the legal limits of the right of way of Red Lion Road and that therefore plaintiff, owner, was not entitled to compensation or, if entitled to damages at all, they should be only nominal.

In considering the question it must be borne in mind that this is a power transmission line on poles, over which are strung three wires carrying a load of 33,000 volts. The wires are 45 feet from the ground and the line cannot be used for domestic purposes by the abutting property owners.

The steel standards of utility companies, with their burden of wires, are common sights as they march over the hills and valleys of our countrysides, but these power lines are erected on easments purchased and paid for by the utility companies. In our present case the wires are strung on poles rather than steel standards, but it is a power line, nevertheless.

It is conceded by all parties that title of plaintiff's land extends to the center of Red Lion Road and that the electric line is erected on that portion of Red Lion Road, title of which is in plaintiff.

The relatively few cases in which the questions now before us have been considered make a distinction between city and rural areas and apply different rules to each. In what is perhaps the leading case dealing with the subject, McDevitt et al. v. People's Nat. Gas Co., 160 Pa. 367 (1894), appears the following quotation from the opinion as copied from defendant's brief:

"Forbes street was a city highway, and subject like all other streets in a city to urban servitudes for the benefit of the public. In land taken for a highway in the country, the easement acquired by the public is only for the purposes of a way over the surface. For all other purposes the land may be occupied by the owner so long as the public easement is not disturbed. We accordingly held in Sterling's Appeal, 111 Pa. 35, that the maintenance of a pipe line under such a highway imposed an additional servitude upon the land. It may be a very slight one, but to some extent it abridges the rights of the landowner in the soil. Our brother Sterrett said in that case: 'As to streets and alleys in cities and boroughs, there are reasons why a different rule to some extent should prevail.' These reasons are obvious. The necessity for drainage; for a water supply; for gas for purposes of lighting; for natural, or fuel gas, for heat; for subways, for telegraph and other wires; and for other urban necessities or conveniences, give to the municipality a control over the sub-surface that the township has not. Property in a city is no less sacred than property in the country. The title of the owner is neither better nor worse because of the location of his land. But its situation may subject it to a greater servitude in favor of the public in a large, compactly built city than would be imposed upon it in the open country. The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewers, gas and water mains, and any other urban uses. In taking the streets for these necessary or desirable purposes it is acting not for its own profit but for the public good. It is the representative of the inhabitants of the city, considering their health, their family comfort, and their business needs; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers. If the city abridges his

control over the soil in and under the streets, it compensates him by making him a sharer in the public advantages that result from proper drainage, from an abundant water supply, from the general distribution of gas, and the like. The disturbance of the owner's control over the sub-surface of the streets is in a legal sense an invasion of his rights, but it is damnum absque injuria. He has no right of action against the municipality therefor: Dillon on Municipal Corporations, par. 691, §699; Angell on Highways, §207; Elliott on Roads and Streets, 299; Lockhart v. Railway Co., 139 Pa. 423; Sterling's Appeal, 111 Pa. 35. The use of the surface is not restricted to the modes of travel in common use when the street is opened, but such improved methods of travel as the public interest requires may be adopted with the consent of the municipality. In Rafferty v. The Central Traction Company, 147 Pa. 579, we held that the operation of a street railway on a public street, when authorized by law, does not impose an additional servitude on the land, whether the railway company employs horses as motive power, or a cable, or electricity. It is a legitimate use of the surface in aid of the public right of passage over the streets."

Counsel for defendant argues that the distinction between city and township as expressed in what he terms the "old cases" is no longer valid as applied to well-developed first class townships such as Lower Moreland.

It may be true that the distinction is somewhat unrealistic when applied to closely built-up sections such as Ardmore in Lower Merion Township, but Lower Moreland Township is still rural and suburban in character; plaintiff has a lot 400 feet in front on Red Lion Road and it is a matter of general knowledge that even in the developed parts of the township the great

majority of the homes are single dwellings on lots varying from 50 to 100 feet in width. We have found no case and none has been called to our attention in which the distinction between city and township as pointed out in McDevitt et al. v. Peoples Natural Gas Co. has been abrogated.

In Sterling's Appeal, 111 Pa. 35, the easement was a pipe for natural gas placed under the ground, yet it was held to impose an additional servitude on the land of the owner.

It seems to us that there is a much stronger reason for holding that a power line on high poles imposes an additional servitude on plaintiff's land. It is contended, however, that even if plaintiff is entitled to damages, they should be only nominal. Counsel for defendant supports his contention that if damages are allowed they should only be nominal by pointing to the testimony of the real estate experts who testified that the chief factor in depreciating the value of plaintiff's land was the unsightliness of the power line and that no recovery should be allowed merely because the poles and wires are unsightly: Shinzel v. Bell Telephone Company of Philadelphia, 31 Pa. Superior Ct. 221 (1901).

It may be true that plaintiff cannot recover because the poles and wires do violence to his sense of beauty and are unsightly from his standpoint but if, as the real estate experts testified, the poles are there and that fact alone may affect the market value of the property, it is not merely the unsightliness of the poles, but their presence also that may affect the market value of the property.

It was also testified that the power line, with its load of 33,000 volts, is a danger to plaintiff. While this was contradicted by an engineer of defendant company, the question of fact thus raised was a matter for the jury of view in the first instance.

It seems to us that the fact that defendant by condemnation proceedings has acquired an easement in the land of plaintiff for its power line inflicts some damage on plaintiff. If he sells his property, any title company is sure to turn up this easement as an objection to a clear title which may affect its marketability and cause a reduction in the selling price.

We therefore are of the opinion that we cannot say as a matter of law that the damages sustained by plaintiff are merely nominal. We were informed at the argument that defendant has also appealed from the award of the jury of view and we therefore do not pass upon the propriety of the award of $1,000.

What has been said up to this point in the opinion applies to the facts of the case of Krutsch v. The Philadelphia Electric Company, 69 Montg. 402. Inasmuch as the same questions are involved in the case of Anderson et ux v. The Philadelphia Electric Company, we have not discussed the facts of the latter case. Counsel for defendant has combined the two cases in his brief and we have combined them in this opinion.

And now, October 27, 1953, the exceptions in both cases are dismissed.