692 So.2d 928 (1997)
NERBONNE, N.V., etc., Appellant,
v.
FLORIDA POWER CORPORATION, etc., et al., Appellees.
No. 96-1648.
District Court of Appeal of Florida, Fifth District.
March 27, 1997.
Rehearing Denied May 5, 1997.
Lauri Waldman Ross, of Lauri Waldman Ross, P.A., and John C. Lukacs, of Lukacs & Lukacs, P.A., Miami, for Appellant.
Lilburn R. Railey, III, and Mary M. Wills, of Mathews, Railey, DeCubellis & Goodwin, P.A., Orlando, for Appellee, Orange County.
Bruce Crawford, of Crawford & Owen, P.A., and J. Bradford Hines, St. Petersburg, for Appellee, Florida Power Corporation.
GRIFFIN, Judge.
Appellant, Nerbonne, N.V. ["Nerbonne"], seeks review of an order of the lower court denying relief to appellant on its claim of inverse condemnation. The sole issue on appeal is whether Orange County's grant of a permit to Florida Power Corporation in 1991 to construct a power line over an easement deeded to the County in 1952 and the subsequent erection of the power line exceeded the scope of the grant of easement to the County and, thus, constituted a taking of Nerbonne's property.
The document in question was entitled "Right-of-Way Agreement" and provided as follows:
That the parties of the first part, in consideration of the sum of $1.00 paid by the party of the second part, the receipt of which is hereby acknowledged, does hereby give and grant to the party of the second part and its successors a right-of-way for public road purposes and full authority to enter upon, construct and operate a road over and upon the following described lands situate in Orange County... TO HAVE AND TO HOLD the said easement or right-of-way unto the party of the second part and its successors for the purpose aforesaid.
Nerbonne relies on the principle that an easement must be read literally and asserts straightforwardly that the grant of an easement or "right-of-way" for "public road purposes" [1] confers on the County the right to install a public road and nothing else. Nerbonne urges that the above quoted language cannot be stretched to include a grant of an easement to construct (or allow to be constructed) a power line. Nerbonne's position has the force of common sense and plain meaning; nevertheless, for the reasons that follow, we hold that the rights granted in this case by Nerbonne's predecessor in interest *929 did include the right to install a power line and affirm.[2]
The issue presented in this appeal does not appear to have been directly decided in Florida. There is a split of authority in other jurisdictions but the majority of courts considering the issue appear to have concluded that construction of a power line which does not interfere with highway travel is a proper use of a highway easement and is not regarded as imposing an additional burden or servitude on the underlying estate. Fisher v. Golden Valley Elec. Ass'n, 658 P.2d 127 (Alaska 1983); Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111 (1895); Hall v. Lea County Electric Co-op., Inc., 78 N.M. 792, 438 P.2d 632 (1968); Pickett v. California Pacific Util., 619 P.2d 325 (Utah 1980). The reasoning behind this view was explained by the Alaska Supreme Court in Fisher as follows:
The reasoning underlying this position is that electric, and telephone, lines supply communications and power which were in an earlier age provided through messengers and freight wagons traveling on public highways. So long as the lines are compatible with road traffic they are viewed simply as adaptations of traditional highway uses made because of changing technology:
The easement acquired by the public in a highway includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway.

McCullough v. Interstate Power & Light Co., 163 Wash. 147, 300 P. 165, 166 (1931).
Fisher, 658 P.2d at 129. Similarly, in the early case of Cater v. Northwestern Telephone Exchange Co., 60 Minn. 539, 63 N.W. 111, the court reasoned:
The question, then, is, what is the nature and extent of the public easement in a highway? If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals,constituting, respectively, the iter, the actus, and the via of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use. Another proposition, which we believe to be sound, is that the public easement in a highway is not limited to travel or transportation of persons or property in movable vehicles. This is, doubtless, the principal and most necessary use of highways, and in a less advanced state of society was the only known use, as the etymology of the word "way" indicates.
* * * * * *
It seems to us that a limitation of the public easement in highways to travel and the transportation of persons and property in movable vehicles is too narrow. In our judgment, public highways, whether urban or rural, are designed as avenues of communication; and, if the original conception of a highway was limited to travel and transportation of property in movable vehicles, it was because these were the only modes of communication then known; that as civilization advanced, and new and improved methods of communication and *930 transportation were developed, these are all in aid of and within the general purpose for which highways are designed. Whether it be travel, the transportation of persons and property, or the transmission of intelligence, and whether accomplished by old methods or by new ones, they are all included within the public "highway easement," and impose no additional servitude on the land, provided they are not inconsistent with the reasonably safe and practical use of the easement.
Id. at 112-113.[3] These cases appear to express the better reasoned view of this issue. Moreover, this reasoning appears most consistent with the Florida cases that have considered the generally understood scope of a public road right-of-way. See Dickson v. St. Lucie County, 67 So.2d 662, 665 (Fla.1953). If the grantor had intended in 1952 to exclude public utilities from the easement, it would have been possible to do so. Since the document is silent, we construe the grant of right-of-way for public road purposes to include public utilities.
AFFIRMED.
COBB and ANTOON, JJ., concur.
NOTES
[1] The conveyance of a right-of-way is generally held to create only an easement. Jon W. Bruce and James W. Ely, Jr., The Law of Easements and Licenses in Land § 1.06[1] (rev. ed.1995).
[2] We decide this case solely on the ground stated. We find that appellees' other arguments are either not well founded or are not dispositive. The basis for our decision turns on the scope of the grant to the County.
[3] Other courts, however, have found that power lines constitute an additional servitude in rural, but not urban, areas. See Padgett v. Arkansas Power & Light Co., 226 Ark. 409, 290 S.W.2d 426, 428-29 (1956); Anderson v. Philadelphia Elec. Co., 2 Pa. D. & C.2d 709 (1954). Still others have held that there is no additional servitude where the electricity is used for a purpose which is itself incidental to highway travel, such as street lighting. See, e.g., Gurnsey v. Northern Cal. Power Co., 160 Cal. 699, 117 P. 906, 908-09 (1911); Potomac Edison Co. v. Routzahn, 192 Md. 449, 65 A.2d 580, 585-86 (1949). Finally, some authorities hold that both in urban and rural areas power lines are beyond the scope of a highway easement and constitute an additional servitude. Louisiana Power & Light Co. v. Dileo, 79 So.2d 150, 155 (La.Ct.App.1955); Brown v. Asheville Elec. Light Co., 138 N.C. 533, 51 S.E. 62, 65 (1905).