**KEOKUK JUNCTION RAILWAY CO.,**
an Iowa Corporation, Appellant,

v.

**IES INDUSTRIES, INC., a Corporation, and IES Utilities, Inc., Appellees.**

No. 99–340.

Supreme Court of Iowa.

Oct. 11, 2000.

Bruce C. McDonald of McDonald Law Office, Keokuk, and Daniel A. LaKemper of Keokuk Junction Railway Co., Keokuk, for appellant.

Gerald D. Goddard of Cray, Goddard, Miller & Taylor, L.L.P., Burlington, for appellees.

SNELL, Justice.

This is an appeal from the Iowa District Court in a declaratory judgment action. Ruling on cross-motions for summary judgment, the court granted the motion in favor of defendant IES Industries, Incor-

porated. The district court was persuaded that a public highway purposes easement included within it the right of a private company to install electric utility poles. The court also found that the plaintiff landowner did not have standing to challenge the city's permission to the utility company enabling it to erect its lines on the plaintiff's land subject to the easement. We granted review and now reverse and remand.

### I. Background Facts and Proceedings

This case involves the scope of an easement secured by the city of Keokuk from Keokuk Junction Railway Company (KJRY). In 1993, through eminent domain proceedings, Keokuk condemned a portion of KJRY's land to build a public street, Twin Rivers Drive, above KJRY's railroad tracks. In 1997, Keokuk allowed IES to build electric power lines within the city's right of way on KJRY's land. Keokuk had given a letter to IES stating that it had no objection to this use of the city's easement. IES is a private corporation existing for profit. It is, however, considered a public utility under Iowa law. Iowa Code § 476.1 (1999); *see* 27A Am.Jur.2d *Energy* § 194 (1996) ("[A] private corporation engaged in furnishing electricity to a municipality or its inhabitants is manifestly a 'public service' or 'public utility' . . . ."). This fact was stipulated to by the parties.

KJRY, the present appellant, immediately brought this lawsuit for declaratory judgment claiming that the construction of power lines by IES constitutes an additional servitude for which KJRY is entitled to compensation. IES maintains that the easement held by the city encompasses this type of activity and, as such, erection of power lines falls within the scope of the original easement.

The easement obtained by the city of Keokuk from KJRY is a public purpose easement which specifically created a right of way for construction, maintenance, and other highway purposes of the portion of Twin Rivers Drive that passes over KJRY's land. The purpose stated by the city to KJRY was as follows:

> The City of Keokuk, Lee County, Iowa, desires the rights specified in the lands sought to be condemned for road right of way and/or obtaining and removing gravel and/or other suitable material for the construction, improvement and/or maintenance of the new street to be constructed, known as Twin Rivers Drive, within the City of Keokuk, Iowa.

The city also proclaimed that the condemnation would create a "permanent right of way easement for construction purposes and highway purposes . . . ." In short, the easement taken by the city was a public use easement for two purposes: (1) construction and maintenance of Twin Rivers Drive and (2) highway purposes.

Appellant, KJRY would have us look only at the first purpose to determine the scope is limited to construction and removal of materials for maintenance. However, the second provision broadens the scope of the easement for highway purposes as well. It is the scope of "highway purposes" that is at issue in determining whether utility lines fall within the scope of the original easement.

Ruling on cross-motions for summary judgment, the district court sustained the motion for IES. The court based its decision on the conclusion that the "use of the electric transmission lines constitutes an incidental use or incidental easement rather than a burden which is in addition to the street right-of-way." The district court was specifically persuaded that the power lines in question were "owned and operated by a public utility which serve[d] the public generally, and that the primary easement in this case [was] a municipality's city street."

Additionally, the court held that KJRY lacked standing to challenge whether Keokuk's letter to IES gave permission to build the lines within its easement because KJRY was not a party to whatever transpired between the city and IES. KJRY

objects to this conclusion and claims the city never actually gave IES permission but merely stated it had "no objection." The city's letter made it clear to IES that Keokuk did not purport to give IES actual authority to build the lines because it was unsure if it had the right to convey such permission. Accordingly, KJRY posits that there was no legal relationship between Keokuk and IES and, therefore, KJRY does not lack standing.

In this appeal, KJRY challenges the district court's decision granting summary judgment in favor of IES and finding that KJRY lacked standing to challenge the city's letter. Further, KJRY asserts its own motion for summary judgment should have been granted because the erection of electric power lines resulted in an additional servitude for which KJRY should be compensated.

## II. Scope and Standard of Review

 This action was brought in equity. Generally, all cases in equity are reviewed de novo. Iowa R.App. P. 4. However, the same is not true if the appeal stems from the granting of summary judgment. *Baratta v. Polk County Health Servs.*, 588 N.W.2d 107, 109 (Iowa 1999). Notwithstanding the nature of this equitable action, the court "cannot find facts de novo in an appeal from summary judgment." *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981). Review of a case in equity resulting in summary judgment is for correction of errors at law. Iowa R.App. 4; *Baratta*, 588 N.W.2d at 109. Therefore, the court reviews the district court's grant of IES's motion for summary judgment and the denial of KJRY's motion for summary judgment for the correction of errors at law.

 The court will affirm if the entire record including pleadings, discovery, and affidavits on file show there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). A genuine issue of material fact is lacking when a reasonable jury or judge could conclude that no evidence entitles the nonmoving party to relief. *Baratta*, 588 N.W.2d at 109; *Fees v. Mutual Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). "A fact is 'material' only when its determination might affect the outcome of the suit." *Baratta*, 588 N.W.2d at 109. The grant or denial of a motion for summary judgment is reviewed in the light most favorable to the nonmovant. *Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 721 (Iowa 1995). Under these circumstances, summary judgment should be affirmed if IES has shown no genuine issue of material fact existed such that it is entitled to judgment as a matter of law. *See Schumacher Elec., Inc. v. DeBruyn*, 604 N.W.2d 39, 41 (Iowa 1999); *Marcus v. Young*, 538 N.W.2d 285, 287 (Iowa 1995).

## III. Issue on Appeal

 "An easement is a liberty, privilege, or advantage in land without profit, existing distinct from ownership." *Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982). When an easement is created by a municipality through the use of its eminent domain power, it is taken for public benefit. However, "[p]rivate property shall not be taken for public use without just compensation being made, or secured to be made to the owner thereof...." Iowa Const. art. I, § 18. Once a valid easement has been created and the servient landowner justly compensated, the continued use of the easement must not place a greater burden on the servient estate than was contemplated at the time of formation. *See Cline v. Richardson*, 526 N.W.2d 166, 169 (Iowa App.1994); 39 Am.Jur.2d *Highways, Streets, and Bridges* § 183 (1998) ("The general rule is that the law will not by construction effect a grant of a greater interest than is essential for the public use.").

 The notice of condemnation provided KJRY with the scope of the easement. It immediately stated: "[T]he City

of Keokuk, Lee County, Iowa, desires certain rights for permanent right of way easements for *construction purposes and for highway purposes.*" (emphasis added). To determine the scope of the easement, this court compares the language of the easement with the proposed use. Three considerations are: (1) the physical character of past use compared to the proposed use; (2) the purpose of the easement compared to the purpose of the proposed use; and (3) the additional burden imposed on the servient land by the proposed use. Restatement (First) of Property § 478 (1944 & Supp.1993). One thing is certain, a third party cannot be given more rights under the easement than the easement conveys to the holder. *See Snyder v. Fort Madison St. Ry.,* 105 Iowa 284, 288, 75 N.W. 179 (1898).

### A. The Five Possibilities

█ We are mindful that the national treatment of this issue is hardly uniform. The states which have addressed the present question have come to no less than five different conclusions. The possible outcomes are: (1) utility poles are within the highway easement; (2) utility poles are within the highway easement, but only if they are used to furnish power for reasons directly related to travel; (3) utility poles are within the highway easement, but only in relation to urban areas; (4) utility poles are within the highway easement if they (a) are necessary for travel purposes, and (b) the highway is in an urban area; or (5) utility poles are not within the highway easement. R.D. Hursh, Annotation, *Electric Light or Power Line in Street or Highway as Additional Servitude,* 58 A.L.R.2d 525, 527–28 (1958) [hereinafter Hursh]; *see* Annotation, *Scope of Prescriptive Easement for Access (Easement of Way),* 79 A.L.R.4th 604 (1990).

### 1. Erection of Power Lines Does Not Create an Additional Servitude

This view takes the position that the affected landowner cannot seek contribu-

tion for the installation of electric utility lines erected under the authority of a highway easement. This is true regardless of the location of the highway, the use of the lines, or the lack of actual ability to contemplate this type of use at the easement's formation. Hursh, 58 A.L.R.2d at 528–29. This viewpoint is strongest when a public, rather than private, utility is involved because it puts the erection of power lines within the purview of the public need. This viewpoint bases its conclusion on the need to adapt the easement to the advancement of technology. *See Crawford v. Alabama Power Co.,* 221 Ala. 236, 128 So. 454, 457–58 (1930) (holding that as time has progressed, "the vanguard of progress moves steadily onward" and the public use is served by the installation of electric lines along highways).

Florida has adopted this approach. *See Nerbonne, N.V. v. Florida Power Corp.,* 692 So.2d 928, 929–30 (Fla.Dist.Ct.App. 1997). The court recognized that "construction of a power line which does not interfere with highway travel is a proper use of a highway easement and is not regarded as imposing an additional burden of servitude on the underlying estate." *Id.* at 929 (citing *Fisher v. Golden Valley Elec. Ass'n,* 658 P.2d 127, 129 (Alaska 1983)). The Florida court adopted the rationale of earlier decisions from Alaska, Minnesota, and Washington. *Id.* (citing *Fisher,* 658 P.2d at 129; *Cater v. Northwestern Tel. Exch. Co.,* 60 Minn. 539, 63 N.W. 111, 112–113 (1895); *McCullough v. Interstate Power & Light Co.,* 163 Wash. 147, 300 P. 165, 166 (1931)). The Florida court was persuaded:

> The reasoning underlying this position is that electric ... lines supply communications and power which were in an earlier age provided through messenger and freight wagons traveling on public highways. So long as the lines are compatible with road traffic they are viewed simply as adaptations of traditional highway uses made because of changing technology: The easement acquired by

the public in a highway includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway.

. . . .

. . . Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed.

*Id.* (citations omitted).

While this argument has merit, KJRY correctly points out that at the time of formation of the 1993 easement, electric power lines were prevalent and easily cognizable by the city of Keokuk, yet no provision was made for them in the easement. The easements at issue in Florida and the other cited cases were decades old, created in a time where utility lines were not contemplated. *See id.* at 928 (involving a 1952 easement challenged in 1991); *McCullough*, 300 P. at 166 (discussing a 1909 easement challenged in 1931). It was necessary in those cases to adapt the scope of the easement to the changing times rather than invalidate the easement or stifle progress. Here, no similar contemplation problem exists because electric utility poles could easily have been contemplated in 1993 at the easement's formation.

The Alaska case relied on in *Nerbonne* can similarly be distinguished from the present case because in Alaska, a statute was enacted to allow utilities to use public right-of-ways without the permission of the servient landowner. *See Fisher,* 658 P.2d at 130 (applying Alaska Stat. § 19.25.010 (Michie 1980)). No such provision exists in Iowa. The sole reason the Alaska Supreme Court validated the utility's installation of electric poles within the easement was the presence of state legislation authorizing this use. *Id.* at 130–31. Without

the aid of such legislation in Iowa, we are clearly not prompted to make a similar decision.

Moreover, the final holding of the Florida court rested on the fact that the easement was silent as to the installation of public utility lines. *Nerbonne,* 692 So.2d at 930. Because the easement could have specifically been limited for this purpose, but was not, the court held that electric lines were included within its scope. *Id.* This argument is flawed. There is no reason to assume silence in the easement works as permission to install utility lines. The better conclusion is the easement language is controlling, and a failure to indicate the right to place utility poles within in it is conclusive that this right does not exist. Further, the present easement was created through eminent domain, and, therefore, KJRY had no way to limit the scope or request a more specific description of what the easement authorized.

IES relies on the holding of the Supreme Court of Utah that "an electric power or transmission line, within the boundaries of a public highway, are consistent with the permissible uses to be made of a public highway easement and do not constitute an additional burden." *Pickett v. California Pac. Utils.,* 619 P.2d 325, 327 (Utah 1980). The Utah court concluded that "uses of a public highway are expansive and are not confined to uses either permitted or contemplated at the time of dedication but are extended to new uses, consistent and proper, as civilization advances." *Id.*

The dissent squarely attacked this holding and worried about its expansive effect. *Id.* at 328 (Hall, J., dissenting).

[E]mploying concepts of the advancement of civilization, and proper and consistent uses of highways in light of human progress, seems squarely to compromise the rights of landowners

. . . . Any private roadway dedicated for use as a public thoroughfare thus becomes a pathway for whatever use a

county authority, in its sole discretion, deems fit to impose, regardless of the detriment to the adjacent landowners. Little imagination is required to summon up possible uses which would be severely detrimental, if not completely destructive, of surrounding farm land; uses which, according to the majority view, could be imposed without the necessity of any compensation whatsoever. *Id.* (Hall, J., dissenting). The dissent properly recognized that when an easement is taken by the city through no choice of the landowner, the city should be bound by the purposes it provides and not those later implicated by progress of civilization. *Id.* at 329 (Hall, J., dissenting). Further, we agree with the dissent that were we to adopt this holding, it would be hard to envision any use that could not be related to the public use somehow and, therefore, authorized by the public highway easement.

2. Erection of Utility Lines Does Not Create an Additional Servitude Where the Lines Are Directly Related to Travel Purposes

It has been stated that "the erection of electric lines in a highway or street for the purpose of lighting is included within a public highway easement, since it is a use which appertains directly . . . to the right of passage and tends to preserve . . . the exercise of that right." 39 Am.Jur.2d *Highways, Streets, and Bridges* § 297. Dating back to 1898, the lone Iowa case that addresses the present issue espouses this rationale. *See Snyder*, 105 Iowa at 288, 75 N.W. 179. However, we left for another day the present question at hand. *Id.* ("It has been held . . . that the erection of [utility] poles . . . imposes a new burden, because they do not in any manner aid in the use of the street by the public; but, as no question of that character is involved here, we refrain from expressing any opinion . . . .").

At issue in *Snyder* was the construction of an electricity pole for the street railway on the landowner's property subject to a highway easement. *Id.* at 286–88, 75 N.W. 179. Because these poles were necessary to "aid in the rapid, convenient, and economical transportation of persons from place to place, and thus to facilitate the use of the street by the public for whom it was intended," they did not exceed the scope of the easement. *Id.* at 287–88, 75 N.W. 179. The court recognized a third party "could not rightfully acquire from the city nor exercise rights in the street which were not authorized by the dedication of the streets, [and were] inconsistent with the easement granted to the public." *Id.* at 286, 75 N.W. 179. The electricity pole was not inconsistent because it had been "settled that an ordinary surface street railway . . . [was] not a new or additional burden upon the public easement" and the pole was necessary for the railway to facilitate public travel. *Id.* at 286–87, 75 N.W. 179. To that end, the city has "the right to authorize various persons to use the roadway and [is] not required to advise landowners what persons [are] so authorized" or obtain permission from the servient landowner. *Merritt v. Peet*, 237 Iowa 1200, 1205–06, 24 N.W.2d 757, 761 (1946).

The more recent Iowa case of *Hagenson v. United Telephone Co.* contains some pertinent dicta. *Hagenson v. United Tel. Co.*, 209 N.W.2d 76, 81 (Iowa 1973). Here, the laying of electric wires failed not because it exceeded the scope of the easement but because no proper easement existed. *Id.* However, the court did state: "If [the defendant] had a prescriptive easement, it was for use of the road as a way, not for the laying of underground cable. Assuming the easement existed, we see no way this could support the claim it conferred a right to lay cable under the roadway." *Id.* at 82. This case suggests in dicta that if an easement had existed it would have only authorized activities related to travel on the road.

Several other states have taken the second approach referenced earlier. Califor-

nia provides the landowner with greater authority. *Gurnsey v. Northern Cal. Power Co.*, 160 Cal. 699, 117 P. 906 (1911). The landowner

> retains his right to the soil ... and to all profit which may be derived therefrom; and a municipality may not confer upon any one the right to enter ... without the consent of the owner of the soil, when such entry is not for purposes incidental to the effective use by the public of the highway.
>
> . . . .
>
> ... [U]nder a general power over public highways to promote safety and convenience of the public travel thereover, the authorities have a right to provide lighting of such highway at night. And for that purpose a public service corporation may be granted a franchise to erect its poles thereon; that such a use of the highway, for the purpose of lighting it, is incidental to the full enjoyment of the public easement, imposing no additional servitude of which the abutting owner can complain.

*Id.* at 908–09. In dicta, the court also said power lines might be erected to feed the light posts and water lines installed to clean the highway. *Id.* at 909. But every mentioned use had to be related to highway use, not public use in general. *See id.* at 908–09.

Mississippi also limits public highway easements to activities and services used for non-commercial purposes. *Berry v. Southern Pine Elec. Power Ass'n*, 222 Miss. 260, 76 So.2d 212, 218–19 (1954). "[T]here is no relation between the operation of an electric power line along a ... highway and public travel thereover." *Id.* at 218. Similar to our facts, in this case six electric power poles were erected on the highway right of way purely to service private individuals in their homes. *Id.* This court would not conclude that "an electric power line serves the purpose of a highway for public travel, or that the use of such line has any relation to public travel" when its use is for commercial pur-

poses. *Id.* at 219. Such a use creates an additional servitude for which the landowner is entitled to be compensated. *Id.* at 218–19.

One legal authority summarizes this position:

> It has been widely held that electric light and power lines in a public street or highway, so placed for the commercial purpose of furnishing electric current to private individuals or concerns, constitute an additional burden or easement for which the owner of the abutting property, who also owns the fee in the street or highway, is entitled to compensation. Even if the poles and wires are reasonably necessary and proper for the furnishing of lights for the way, their further use for the furnishing of electricity to private parties is unauthorized, and entitles the owner of the fee in the highway to demand compensation or to enjoin the unlawful use, but not to require removal of the line.

26 Am.Jur.2d *Eminent Domain* § 228, at 652 (1996).

3. Erection of Utility Lines Does Not Create an Additional Servitude Where the Highway Is in an Urban Area

This distinction is all but extinct in many states that previously espoused it because the line between urban and rural is often hard to determine. Nonetheless, this rule recognizes: "[A]lthough electric power lines erected in urban streets impose no additional servitude for which the owners of the fee are entitled to compensation, an additional servitude is imposed where such lines are erected in rural highways." *Id.* § 227, at 651.

Pennsylvania is one of the few states to adopt this rationale. *See Anderson v. Philadelphia Elec. Co.*, 2 Pa. D. & C.2d 709, 710–14 (Ct. C.P. Montgomery County 1954). The court held that urban conveniences give a municipality additional control over its streets that is not practical or

necessary in a rural setting. *Id.* at 712–14. The usefulness of this rationale under our facts is extremely limited because Keokuk is an urban city and the area in question is a city street. Also, the distinction between urban and rural areas made in this rationale is of doubtful merit.

### 4. Erection of Utility Lines Does Not Create an Additional Servitude Where the Lines for Are for Travel Purposes and Are in an Urban Area

Maryland has addressed this rationale and decided that rural power lines erected for private, nontravel purposes constitute an additional servitude on a highway easement. *Potomac Edison Co. v. Routzahn*, 192 Md. 449, 65 A.2d 580, 584–86 (1949). Similarly, courts in Montana and Ohio prohibit the erection of power lines without compensation where they fail to serve the public interest for travel and are located within rural areas. *Loeber v. Butte Gen. Elec.*, 16 Mont. 1, 39 P. 912, 913 (1895) (holding only those electric light poles erected in urban areas create no additional servitude); *Huss v. Toledo Rys. & Light Co.*, 25 Ohio C.C.(n.s.) 44, 48 (Ct.App.1915) (finding that although the urban street light wire also supplied power to private individuals, its public purpose for travel was not defeated). Again, the rationale behind the distinction between urban and rural is questionable.

### 5. Erection of Utility Lines Constitutes an Additional Servitude for Which the Landowner Must Be Compensated

■ KJRY relies heavily on *Thompson v. City of Osage* to support its argument that "a condemner takes only the estate or interest in the property condemned that is necessary for the purpose of condemnation." *Thompson v. City of Osage*, 421 N.W.2d 529, 532 (Iowa 1988). Unlike the view IES would have us adopt, we do not believe the city's right of way dominates the servient landowner's right to use his land. We have previously recognized:

"Although the condemner is entitled to exclusive use of the land condemned, the owner retains the right to use the property for any purpose not inconsistent with the public right." *Id.*

■ KJRY correctly argues that the installation of the power lines creates an actual burden on the land. IES has placed its electricity poles on land still retained by KJRY in fee simple. When the servient land is burdened by an easement, the servient landowner does not surrender a fee simple. All that is relinquished is so much of the land as is necessary to accomplish the purposes of the easement. Contrary to IES's contention, the landowner would not be getting paid twice for the same land (once by the city and once by the utility) if the utility was forced to pay for its own right-of-way. This is because the land remains in the control of the servient landowner to be used for other uses as long as these uses do not interfere with the purposes of the easement.

The increased risk of harm to KJRY's land also creates an additional burden because overhead power lines create a danger to KJRY's railroad tracks below and its operations in that area in general that was not contemplated at the time of the original easement. In this regard, the West Virginia Supreme Court recognized: "It is true that high voltage of electricity is a dangerous agency wherever it may be found." *Karcher v. Wheeling Elec. Co.*, 94 W.Va. 278, 118 S.E. 154, 155 (1923) (failing to find this fact created an additional burden). Moreover, the construction of these poles on KJRY's land minimizes the use KJRY could have in that area. KJRY did not surrender all use to the land subject to the easement; it retained full possession limited only by the purposes for the easement. KJRY would still be free to sell this portion of the land or enter into an easement agreement with another. Erection of the poles by IES seriously limits these options and thus creates an additional burden.

Similar persuasive authority comes from the various states that have adopted the fifth possible rationale. *See, e.g., Cathey v. Arkansas Power & Light Co.*, 193 Ark. 92, 97 S.W.2d 624, 626 (1936); *Heyert v. Orange & Rockland Utils., Inc.*, 24 A.D.2d 592, 262 N.Y.S.2d 123, 125–26 (1965), *aff'd*, 17 N.Y.2d 352, 271 N.Y.S.2d 201, 218 N.E.2d 263 (1966). "In these jurisdictions it is held that the owners of fee in the street or highway are entitled to be compensated for the additional servitude to which their property is subjected by the erection of electric power lines." Hursh, 58 A.L.R.2d at 543–44.

Arkansas has decisively found that although the state may provide a utility company the right to construct its poles on a highway easement, the owner in fee must still be compensated for it. *Cathey*, 97 S.W.2d at 626. Even though the state held a highway easement for the land, it had "no right to appropriate or take the right-of-way over one's land for any purpose other than for a highway for the use of the public, and every additional servitude to which the land is subjected entitles the owner to compensation for such additional servitude." *Id.* The Arkansas Supreme Court relied on the holding in *Southwestern Bell Telephone Co. v. Biddle*, to make its decision. *See id.* (citing *Southwestern Bell Tel. Co. v. Biddle*, 186 Ark. 294, 54 S.W.2d 57, 58 (1932)). The *Biddle* court held:

> [T]he erection of a telephone line upon the public highway along lands of adjoining owners, in which the public only has an easement for use as a highway, would not prevent the owner of the land from collecting damages for the new servitude to which his land is subjected; such use not having been in contemplation when the easement was taken or granted.

*Biddle*, 54 S.W.2d at 58. The *Cathey* court extended this rationale for telephone poles to electric power poles as well. *Cathey*, 97 S.W.2d at 626.

Louisiana has come to a similar conclusion. *See Louisiana Power & Light Co. v.*

*Dileo*, 79 So.2d 150, 155 (La.Ct.App.1955). The public easement taken by the city was specifically limited to a right-of-way "solely for the construction and maintenance of" the highway in question. *Id.* at 154–55. This did not convey fee simple to the city to allow it to use the land unfettered, rather it only gave the city the right to use the land for purposes listed in the easement. *Id.* at 155. Accordingly, a utility company "cannot set their poles on and their lines across these lands without the consent also of the owners of the surface title thereto, or without securing this servitude by expropriation." *Id.* The court recognized that "[a]lthough the strips of land in question [were] subject to a servitude for public highway purposes, this servitude [did] not extend to the use for private power line purposes." *Id.*

New York has also taken an exclusive stance toward highway easements. *See Heyert*, 262 N.Y.S.2d at 126. As related to a gas main the court found the landowner was "entitled to damages because there [was] an unauthorized taking or use of her property for a purpose which [was] not a lawful highway or street use under the public easement...." *Id.* Moreover, because the installation of the main was not "within the scope of the public's easement[,] such installation constitute[d] an unlawful interference with plaintiff's property rights." *Id.*

In North Carolina it has been held that trees within a public easement may not be removed to make room for utility poles without first compensating the servient landowner. *Brown v. Asheville Elec. Light Co.*, 138 N.C. 533, 51 S.E. 62, 65 (1905). "In order to justify the defendants in setting up the poles, it is necessary for them to show that they have acquired the right to do so, either by consent or condemnation, from the owner of the soil. The designation by the city ... is not enough." *Id.* (quotations and citation omitted). The court aptly stated that the city has no right to grant away the property of the servient landowner. *Id.* Accord-

ingly, "if corporations quasi public ... seek to appropriate it so that they may have a benefit therefrom, every principle of justice demands they should make just compensation...." *Id.* (quotations and citation omitted).

A public easement creates a contract between the servient landowner and the city. *Jordan v. Iowa Dep't of Transp.*, 468 N.W.2d 827; 830 (Iowa 1991); *see Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 835 (Iowa 1976). It stands to reason that an entity not a party to the agreement should not be able to derive a benefit from the easement in the same way prescribed to the city without first paying for it. Moreover, when a city possesses an easement, third parties can only use it to the extent the city could use it. *See Consolidated Cable Utils., Inc. v. City of Aurora*, 108 Ill.App.3d 1035, 64 Ill.Dec. 464, 439 N.E.2d 1272, 1276–77 (1982). It would be inequitable to allow a third party the free use of the easement that not even the easement holder himself enjoys.

Illinois follows this strict interpretation of the easement rule. *See id.* The scope of the easement is limited to only those things specifically named. *See id.* Because the city took an easement from the landowner for gas, electric, and telephone services, the easement was limited only to that. *Id.* The easement could not be expanded to include cable lines. *Id.* We believe this is a sounder conclusion than that adopted by the court in Florida. *Compare id.* (holding the easement language is controlling), *with Nerbonne*, 692 So.2d at 930 (finding the failure to exclude utilities is persuasive).

While it is true that the "holder of the easement possesses all rights necessary to the reasonable and proper enjoyment of the easement," the installation of utilities must be related to the road right-of-way granted in the easement. *Hunter v. Keys*, 229 Wis.2d 710, 600 N.W.2d 269, 273–74 (Ct.App.1999). Here, in this private easement to improve the roadway the court found that placement of electrical wires exceeded the scope of the easement. *Id.* The easement was limited to purposes that would satisfy improving the road for travel. *Id.* Electrical lines were not one of those purposes. *Id.*

We agree with the sound arguments made by the courts adopting the fifth rationale. We conclude that power lines and utility poles are *not included* within the scope of the general public highway easement. Specifically, if the city had wanted its easement to include utilities, it could have stated as much. Allowing a utility company that operates for a profit to place its poles on the servient land without having to pay for this right is manifestly unfair to the servient landowner whose easement did not include utilities within its purview. To hold otherwise would allow the utility company to get something for nothing. The sole existence of a public easement should not enable a company for profit to obtain free use.

**B. Standing to Challenge the City's Agreement with IES**

Because we determine that summary judgment should have been granted in favor of KJRY it is unnecessary to discuss standing to challenge whether IES had actual permission to build its electric poles. Under our holding today, regardless of permission, IES could not erect its utility poles under the authority of the general highway easement without providing compensation to KJRY. This decision does not require IES to remove its poles, rather it charges IES for payment to KJRY for their installation.

**C. Conclusion**

We hold that the easement obtained by the city of Keokuk from KJRY by eminent domain proceedings does not provide any legal basis for the erection of electric power lines by IES without its paying just compensation to KJRY. The district court erred in granting summary judgment to

IES and in overruling KJRY's motion for summary judgment on this issue.

The case is reversed and remanded for entry of judgment in favor of KJRY on this issue and for further relief as is consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who concurs in result only, and TERNUS, J., who takes no part.