# IN THE COURT OF APPEALS OF IOWA

No. 15-2154
Filed October 12, 2016

**EVERETTE HAMNER, JENNIFER HAMNER,**
**JUDY SKOGMAN, and SUSAN HIMES,**
        Plaintiffs-Appellees,

**vs.**

**CITY OF BETTENDORF, IOWA, an Iowa Municipal Corporation,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Scott County, J. Hobart Darbyshire,

Judge.


        The City of Bettendorf appeals the district court's entry of summary

judgment for the plaintiffs.  **AFFIRMED.**



        Kristine Stone, City Attorney, and Rex J. Ridenour, Assistant City

Attorney, for appellant.

        Michael J. Meloy of Meloy Law Office, Bettendorf, for appellees.



        Heard by Danilson, C.J., Tabor, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

The City of Bettendorf appeals the district court's determination that the scope of the City's streambank-stabilization project exceeds the purposes under which the twenty-five-foot wide "utility and drainage easements" were granted and that those easements therefore must be condemned.

We agree with the property owners that the original grantors of the easement did not contemplate the expansive use of the easement now sought by the City. Because "[p]rivate property shall not be taken for public use without just compensation being made, or secured to be made to the owner thereof" under article I, section 18 of the Iowa Constitution, we affirm the district court's ruling that the City must compensate the landowners for the proposed project on the twenty-five-foot easement along Stafford Creek.

## I. Background Facts and Proceedings.

The following facts are not in dispute. Everette Hamner, Jennifer Hamner, Judy Skogman, and Susan Himes (hereinafter referred to as "the landowners") are all property owners where Stafford Creek runs along their south property line. The City of Bettendorf does not own property on either side of Stafford Creek.

The properties at issue are part of the Rolling Meadows subdivision. The Dedication of the subdivision states, in part:

> A perpetual easement is hereby granted to any local public utility or municipal department, their successors and assigns, within the area shown on the Plat and marked "Easement" to install, lay, construct, renew, operate, maintain and remove conduits, cables, pipes, poles and wires, overhead and underground, with all necessary braces, guys, anchors and other equipment for the purpose of serving the subdivision and other property with telephone, electric and gas, sewer and water service, as a part of the respective utility systems. There is also granted (subject to the

prior rights of the public therein) the right to use the streets with aerial service wires to serve adjacent lots and street lights, the right to cut down and remove, or trim and keep trimmed, any trees or shrubs that interfere or threaten to interfere with any such public utility easement. No permanent buildings or trees shall be placed on said area as shown on the Plat and marked "Easement" but the same may be used for gardens, shrubs, landscaping and other purposes that do not then or later interfere with the aforesaid uses or rights herein granted. Nothing herein contained shall be construed to place upon any of the lots shown upon said Plat any easement or rights in the public of any kind other than the tract shown upon said Plat as subject to such easement and the rights herein granted are limited to those areas designated upon said Plat as "Easements."

Each landowner's property is subject to the following easement granted in May 1968 by Rolling Meadows, Inc. to the City:

[A]n easement for utility purposes and for sanitary sewer and storm sewer purposes and for drainage purposes over and across all of the easements as shown upon Rollins Meadows Addition to the City of Bettendorf, Iowa, . . . Rolling Meadows, Inc., as plattor of said Addition, does state that it is the intention of Rolling Meadows, Inc. as plattor that the easements as shown upon said plat of Rolling Meadows Addition to the City of Bettendorf, Iowa be used for storm sewer, sanitary sewer or drainage purposes as well as for utility purposes.

We will refer to these two easements as the 1968 Easements. The 1968 Easements allow the City to enter upon a twenty-five-foot rear section of each of the landowner's real property.

The City adopted the Stafford Creek Stream Bank Improvement Project (the "Project"). The Project includes removing all trees and foliage within the twenty-five-foot easements on both sides of the creek; installing a retaining wall on the Tanglefoot Court side of the creek; adding a seventy-foot coconut wood log along the creek on the landowners' property; installing chain link fences throughout the creek bed; installing on one property a twenty-five-ton "rip rap" (a

collection of rocks along and on the creek bed); reseeding the area with a variety of grasses and plants; and re-grading the slope of the back half of the landowners' backyards, making that portion of the back yards about twice as steep as before the work.

In January 2015, the City requested the appointment of a compensation commission to appraise damages for a 7.5-foot temporary construction easement north of the twenty-five-foot easement on the landowners' properties.

The landowners sought a temporary and permanent injunction, asserting the City's eminent-domain proceeding was not for a public purpose and the 1968 Easements "do[] not allow or authorize [the City] to change the water flow, direction, volume of water, change the grade and elevation of [the landowners'] real properties or to remove all existing mature trees and all vegetation on this twenty-five foot portion of real property subject to said Easement[s]." The landowners also asserted the Project was a taking, which required compensation.

The City's answer admitted its "condemnation proceeding [is] seeking only such temporary construction easement over [the landowners'] properties as it needs to complete the stabilization of the Stafford Creek Streambed." It also admitted "it will be changing the topography within its present easement but affirmatively states that such is not compensable by reason of its existing easement rights." The City is not offering any compensation for the removal of trees, change of land elevation, and the re-grading of twenty-five feet of the landowners' real property.

The parties filed cross-motions for summary judgment. Submitted with the City's motion was an affidavit from the public works director who avowed that creeks within the city "have meandered and new development has occurred upstream which has increased the amount of drainage in these creekways and has intensified the erosion to the creek banks." He further stated:

> 5. The Bettendorf City Council has determined that there is a public purpose in stabilizing specific creekways where adjacent homes and businesses are at risk today, or may be at risk in the near future. These creeks are used for stormwater drainage throughout the city, and it is in the public's interest that they be maintained.
> 6. Improvements to the section of Stafford Creek between Kingsway Drive and Tanglefoot Court have been on the City of Bettendorf's Community Improvement Program (CIP) since FY 2011/2012. The CIP is adopted annually, as part of the city's budget, after public meetings and hearings are held.
> 7. Planned improvements to this creekway include grading the banks to a suitable slope and stabilization of the soil through native plantings. This project will also include the installation of rock riffles that will dissipate the energy of the stream in high flow conditions to minimize future erosion.

The City argued that because of the 1968 Easements the landowners were not entitled to the relief they requested.

For their part, the landowners asserted the 1968 Easements allow the City only to "enter upon a twenty-five-foot rear section of each of plaintiffs' real properties . . . for the purpose of the maintaining of the sanitary sewer, storm sewer, Stafford Creek drainage and utility pole purposes," and the City's Project constitutes a taking larger than the condemnation application allows.

The district court entered judgment for the landowners, concluding:

> [T]he City of Bettendorf does not have the rights under its existing easements to do the proposed work on and along Stafford Creek on [the landowners'] properties. . . . [T]he Court finds that the work of the level proposed by the City exceeds the scope of rights

granted to the City in both easements from 1968. As such, the proposed work would constitute a taking under the Iowa Constitution, and just compensation must be paid. The City must initiate condemnation proceedings for the twenty-five-foot area on which the work is to be done and compensate [the landowners] for the devaluation of their property that the taking will cause.

The City now appeals.

## II. Scope and Standard of Review.

"Review of a case in equity resulting in summary judgment is for correction of errors at law." *Kucera v. Baldazo*, 745 N.W.2d 481, 483 (Iowa 2008) (quoting *Keokuk Junction Ry. Co. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000)). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). "Where the parties agree that all material facts are undisputed, and the case presents solely legal issues, summary judgment is the appropriate remedy." *Kucera*, 745 N.W.2d at 483.

## III. Discussion.

Both parties assert this case is governed by existing case law and the result in *Stew-Mc Development, Inc. v. Fisher*, 770 N.W.2d 839 (Iowa 2009). And both parties claim their positions are necessitated by that case law. We conclude the landowners have the better position.

"An easement is a liberty, privilege or advantage in land without profit, existing distinct from ownership." *Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982). An easement is a restriction on another person's property rights, benefitting the dominant estate and burdening the servient estate. *Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007). Under Iowa law governing easements, the dominant

estate acquires no greater use than the parties intended when an easement was created. *Schwob v. Green*, 215 N.W.2d 240, 243 (Iowa 1974).

"Once a valid easement has been created and the servient landowner justly compensated, the continued use of the easement must not place a greater burden on the servient estate than was contemplated at the time of formation." *Keokuk Junction*, 618 N.W.2d at 362. Moreover, if the easement was "granted for a particular purpose, what is reasonably necessary for that purpose is to be considered." *Flynn v. Michigan–Wisconsin Pipeline Co.*, 161 N.W.2d 56, 65 (Iowa 1968) (quoting 3 Herbert Tiffany, *Real Property*, § 805, at 332 (3d ed. 1939)).

As stated in *Keokuk Junction*, 618 N.W.2d at 356:

> To determine the scope of the easement, this court compares the language of the easement with the proposed use. Three considerations are: (1) the physical character of past use compared to the proposed use; (2) the purpose of the easement compared to the purpose of the proposed use; and (3) the additional burden imposed on the servient land by the proposed use.

The district court considered these factors and determined "the work of the level proposed by the City exceeds the scope of rights granted to the City in the 1968 Easement and Dedication." The City argues the district court erred in concluding the project exceeded the purposes of the 1968 Easements and the scope of the work contemplated constitutes a taking. It maintains the "utility and drainage easement" granted at the time of platting was "clearly given for the express purpose of constructing and maintaining the storm sewer/drainage utility." The City concedes it did not formally adopt a storm water management plan until "some years" after the 1968 Easements were granted. Nonetheless, it

asserts the City "had an interest in preserving easements for the purpose of facilitating the overall drainage system." Even accepting the City's interest in an overall drainage system, that interest does not necessitate reading the 1968 Easements so broadly so as to allow the major changes the project contemplates.

*(1) The physical character of past use compared to the proposed use.* In order to accomplish the 2015 project, the City will remove all trees and foliage within the twenty-five-foot easement area on both sides of the creek. It will install a retaining wall on one side of the creek and a seventy-foot coconut wood log along the creek on the landowners' property. The City will place a twenty-five-ton pile of rocks along either side and in the creek bed, reseed the area with a variety of grasses and plants, and will re-grade and change the elevation of the landowners' back yards. Thus, the project substantially changes the physical character of the past use of the landowners' properties. *See Keokuk Junction*, 618 N.W.2d at 356.

*(2) The purpose of the easement compared to the purpose of the proposed use.* The purpose of the 1968 Easements was "for storm sewer, sanitary sewer or drainage purposes as well as for utility purposes." The City argues statutory provisions give broad definition to "city utility," *see* Iowa Code § 362.2(6) (2015), "public improvement" as including drainage channels, *see id.* § 384.37(19), and drainage as public benefit, *see id.* § 468.2(1). Even so, the easement must place no "greater burden on the servient estate than was contemplated at the time of formation." *Keokuk Junction*, 618 N.W.2d at 355. The district court looked to the language of the Dedication and determined:

While the proposed work does pertain to drainage in a general sense (the increased drainage along the whole of Stafford Creek caused the erosion problems in this area of the creek), and part of the proposed work involves installing new subsurface drainage tiles, the substance and particularly the scope of the work exceeds the purpose of mere maintenance or installation of sewage or drainage utilities. The purpose of the project is to reshape Stafford Creek and the surrounding creek bed to cure past erosion and prevent future erosion. This could potentially be argued as conforming with the "drainage purposes" and "water service" purposes, but the scope and magnitude of the proposed work suggests a greater purpose than mere "water service."

We agree.

*(3) The additional burden imposed on the servient land.* The district court found the third factor noted in *Keokuk Junction* to be the "most significant and compelling." The proposed project involves a complete removal of all current trees and foliage along Stafford Creek on the landowners' properties, as well as substantial re-grading that will result in significantly steeper slope of the landowners' back yards. The re-grading, walls, chain-link fencing, and rock will alter the character and aesthetic of the area. The landowners presented estimates from a consultant of the loss of value of their properties ranging from $27,500 to $30,250. The district court found, "Even if the true devaluation of [the landowners'] land is half of that estimated by [the] consultant, the burden placed on [the landowners'] would still be substantial."

We find the district court's ruling consistent with *Stew-Mc Development*, where the court concluded that the scope of a developer's private easement over a lane on farm properties was not broad enough to allow the uncontemplated "comparatively dense residential development" proposed. 770 N.W.2d at 847. We agree with the landowners that the original grantors of the easement did not

"contemplate the expansive use of the easement now sought" by the City. *Id.* at 848. Because "[p]rivate property shall not be taken for public use without just compensation being made, or secured to be made to the owner thereof" under article I, section 18 of the Iowa Constitution, we affirm the district court's ruling that the City must compensate the landowners for the proposed project on the twenty-five-foot easement along Stafford Creek.

**AFFIRMED.**